567 So.2d 928 (1990)
FLORIDA OPTOMETRIC ASSOCIATION and Alan P. Fisher, O.D., Appellants,
v.
DEPARTMENT OF PROFESSIONAL REGULATION, BOARD OF OPTICIANRY, Professional Opticians of Florida, Inc., and Charles Arnold, Appellees.
No. 89-2375.
District Court of Appeal of Florida, First District.
September 5, 1990.
*930 Leonard A. Carson, John D.C. Newton, II, and Kimberly L. King of Carson & Linn, P.A., Tallahassee, for appellants.
Robert A. Butterworth, Atty. Gen., and Theresa M. Bender, Asst. Atty. Gen., Tallahassee, for appellee Department of Professional Regulation, Bd. of Opticianry.
Wilson Jerry Foster, Tallahassee, for appellees Professional Opticians of Florida, Inc., and Charles Arnold.
ALLEN, Judge.
This is an appeal by the Florida Optometric Association and Allen P. Fisher, an optometrist licensed under Chapter 463, Florida Statutes (optometrists) from a declaratory statement[1] issued by the Board of Opticianry (Board). The optometrists argue (1) that the Board erred in finding that they lacked standing to participate in the proceedings; (2) that the Board erred in finding that their petition to intervene in the proceedings was untimely; and (3) that the declaratory statement addressed a question of general applicability and, therefore, should have been addressed by rule, rather than by declaratory statement. Because our agreement with the optometrists' first two arguments requires us to set aside the declaratory statement, we do not decide the third issue presented.
On March 30, 1989, appellees, Professional Opticians of Florida, Inc., and Charles Arnold, an optician licensed under Chapter 484, Florida Statutes, filed a petition for declaratory statement with the Board. The *931 petition first acknowledged that Chapter 484, Florida Statutes, defines "opticianry,"[2] and provides that "[i]t is unlawful for any optician to engage in the diagnosis of the human eyes, attempt to determine the refractive powers of the human eyes, or, in any manner, attempt to prescribe for or treat diseases or ailments of human beings[,]"[3] and then offered the following question:
Is an optician permitted to use vision screening equipment such as a Titmus Vision Tester to check a consumer's visual acuity (both far and near), with or without a correction?
The Titmus Vision Tester is an ophthalmic instrument designed for rapid and precise measurement of visual performance. It can be used to test near, intermediate and distance vision, for each eye alone or for both working together; muscle balance; color perception; depth perception; and peripheral vision.
In accordance with the directive of Section 120.565, Florida Statutes, the Board provided public notice of the petition in the April 21, 1989 edition of the Florida Administrative Weekly. The notice provided,
NOTICE IS HEREBY GIVEN that the Board of Opticianry has received a Petition for Declaratory Statement from the Professional Opticians of Florida, Inc. and Charles Arnold, in which the petition asks whether an optician is permitted to use vision screening equipment to check a consumer's visual acuity, with or without a correction. The Petition has been assigned the number 89-DS-1. Copies of the Petition may be obtained from LouElla Cook, Executive Director, 130 North Monroe Street, Tallahassee, Florida 32301.
15 Fla. Admin. Weekly 1699 (April 21, 1989).
One week earlier, in the April 14, 1989 edition of the Florida Administrative Weekly, a notice of a May 5, 1989 meeting of the Board had been published. It provided:
The Florida State Board of Opticianry will hold the following meeting to which all persons are invited:
DATE AND TIME: Friday May 5, 1989, commencing at 9:00 A.M.
PLACE: Department of Professional Regulation, Conference Room, 130 North Monroe Street, Tallahassee, Florida XXXXX-XXXX
PURPOSE: To conduct Regular Board Business. If a person decides to appeal any decision made by the Board with respect to any matter considered at this meeting or hearing, he will need a record of the proceedings, and for such purpose, he may need to ensure that a verbatim record of the proceedings is made, which record includes the testimony and evidence from which the appeal is to be based.
A copy of any item on the agenda may be obtained by writing to: Ms. LouElla Cook, Executive Director, Board of Opticianry, 130 North Monroe Street, Tallahassee, Florida XXXXX-XXXX. You will be charged $.17 per page for the number of copies desired.
15 Fla. Admin. Weekly 1599 (April 14, 1989).
The agenda for the May 5, 1989, meeting listed several matters as being set for "hearings" and "final order action," but agenda item IV, which was the only reference to the petition for declaratory statement, merely provided,
IV. PETITION FOR DECLARATORY STATEMENT 89 DS-1
A. PROFESSIONAL OPTICIANS OF FLORIDA & CHARLES ARNOLD.
Further, the agency file for 89 DS-1 gave no indication as to what action, if any, was to be taken on the petition at the May 5 meeting.
On May 2, 1989, the optometrists filed a petition to intervene in the declaratory statement proceedings and requested a formal hearing under Section 120.57(1), Florida Statutes. In their petition, the optometrists asserted that their substantial interests would be determined by an affirmative answer to the question presented in the petition for declaratory statement. Specifically, *932 they asserted that the Titmus Eye Tester can be used to determine the refractive power of the human eyes, and that, while such determinations are made by optometrists as part of their practice, opticians are expressly prohibited from making such determinations. The optometrists' petition contended, therefore, that an affirmative answer to the question presented in the petition for declaratory statement would permit licensed opticians to engage in the practice of optometry, contrary to the provisions of Chapters 463 and 484, Florida Statutes.
At the meeting of the Board on May 5, 1989, counsel for the Board indicated that the Board would be conducting a hearing on the petition for declaratory statement. Counsel for the optometrists was present and made a brief argument in support of the petition to intervene and for a formal hearing under Section 120.57, Florida Statutes. The Board took the optometrists' petition under advisement, but did not allow them to participate as parties in the hearing. The hearing consisted of presentation of testimony by Charles Arnold and argument by counsel for Arnold and the Professional Opticians of Florida, Inc.
At the August 4, 1989 meeting of the Board, the Board voted to deny the optometrists' petition for two reasons: because it was untimely and because the optometrists lacked standing to participate.[4] As to the petition for declaratory statement, the Board voted to approve the following response,
ORDERED AND ADJUDGED that use of the Titmus Vision Tester and similar vision screening equipment is not prohibited to licensed opticians to determine the visual acuity of consumers (both far and near) so long as the optician does not engage in the diagnosis of the human eye, does not attempt to determine the refractive powers of the human eyes and does not attempt to prescribe for or treat diseases or ailments of human beings.
The Board action was incorporated into a final order dated October 17, 1989. This appeal is from that final order.
The optometrists first contend that the Board erred by concluding in its final order that the optometrists had "failed to allege a substantial interest in [the declaratory statement proceedings] sufficient to warrant their intervention and [did] not have standing to participate." We agree with the optometrists' contentions.
A two-part test is applied in evaluating whether a person has alleged a "substantial interest" sufficient to entitle such person to initiate a 120.57 proceeding or intervene in proceedings already pending.[5] The person must allege:
(1) that he will suffer injury in fact which is of sufficient immediacy to entitle him to a section 120.57 hearing, and (2) that his substantial injury is of a type or nature which the proceeding is designed to protect.
Agrico Chemical Co. v. Department of Envtl. Regulation, 406 So.2d 478, 482 (Fla. 2d DCA 1981), review denied, 415 So.2d 1359 (Fla. 1982).
In Florida Medical Ass'n v. Department of Professional Regulation, 426 So.2d 1112 (Fla. 1st DCA 1983), we applied the Agrico Chemical test to a case closely analogous to the present case. There, we held that an association of medical doctors had standing to challenge a proposed rule of the Board of Optometry that would have authorized optometrists to prescribe certain legend drugs. We held that the first prong of the Agrico Chemical test, "injury-in-fact," was satisfied by the association's allegations of threatened injury; i.e., that absent the proposed rule, patients would have to seek the services of a physician for treatment involving use and prescription of the legend drugs. We then held that the second prong of the test, the "zone of interest" requirement, was satisfied by the association's allegation that the prescribing of the *933 legend drugs was delineated by statute as being exclusively within the authority of physicians under Chapter 458, Florida Statutes, and not within the authority of optometrists under Chapter 463, Florida Statutes. On this point, we said:
It necessarily follows that an agency's determination of what forms of treatment are permissible or prohibited within each health care profession is within the "zone of interest" protected by the statutes. The rule at issue here, according to petitioners, allows optometrists to provide a form of treatment for which they are not qualified, and which has not been authorized by the legislature under Chapter 463. They allege further that the activities permitted by the rule are encompassed within the "practice of medicine," which the legislature has declared to be the exclusive domain of physicians licensed under Chapter 458. [footnote omitted]. The practice of medicine or attempt to practice medicine without a license is a felony of the third degree. Section 458.327 (Florida Statutes). If the contentions of appellant are correct, the rule purports to authorize acts by optometrists which are unlawful under Chapter 458, and contrary to the stated purposes of both Chapters 463 and 458.
We find, contrary to the ruling of the hearing officer, that the petition in behalf of the physician and the medical associations satisfies the "zone of interest" requirement. We note appellee's contention that appellants must assert an injury solely within the "zone of interest" protected by Chapter 463. This is incorrect. Since the crux of the controversy involves the claim that Chapter 463 does not authorize the rule, it is obvious that the effect of other statutes must be considered in determining standing.
Florida Medical Ass'n v. Department of Professional Regulation, 426 So.2d at 1117.
In the present case, the allegations in the optometrists' petition to intervene and for a formal hearing are virtually the same as the allegations made by the medical association in Florida Medical. Consequently, we find the Florida Medical opinion controlling and hold that the optometrists had standing to intervene and request a formal hearing.
In concluding that the optometrists lacked standing, the Board relied upon our opinion in Florida Soc'y of Ophthalmology v. Board of Optometry, 532 So.2d 1279 (Fla. 1st DCA 1988). We find that the Board's reliance on that case reflects a misapprehension of our holding therein. The Florida Soc'y of Ophthalmology case is distinguishable from the present case in several respects. For purposes of the present analysis, the most material distinction is that Florida Soc'y of Ophthalmology did not involve an asserted invasion of a statutorily delineated, exclusive area of practice. Consequently, the "zone of interest" prong of the Agrico Chemical test was not satisfied. Conversely, in the present case, invasion of a statutorily delineated, exclusive area of practice is alleged, and the "zone of interest" prong is satisfied.
Next, the optometrists argue that the Board erred in finding that their petition to intervene was untimely. Resolution of this issue requires careful analysis of the interplay of a number of statutes and administrative rules.
The Board's contention that the optometrists' petition was untimely goes as follows. The Board gave notice of the petition for declaratory statement in accordance with the provisions of Section 120.565, Florida Statutes.[6] Upon being so notified, *934 persons who believed their substantial interests might be affected by the declaratory statement, including the optometrists, had the opportunity to petition to intervene in the declaratory statement proceedings. The Board has provided, by Rule 21P-8.04, Florida Administrative Code, that any person entitled to petition for a declaratory statement may do so in accordance with Chapter 28-4, Florida Administrative Code. Rule 28-4.007, Florida Administrative Code, provides that an agency may, at its discretion, hold a hearing to dispose of a petition for declaratory statement and, if a hearing is held, it shall be conducted pursuant to Section 120.57, Florida Statutes. When the decision was made to hold a Section 120.57 formal hearing as part of the Board's May 5, 1989 meeting, the Board was required to give notice of the hearing only to the parties to the proceeding. See Section 120.57(1)(b)(2), Florida Statutes. Since the opticians were the only parties, only they were given written notice that a formal hearing would be held on May 5, 1989.[7] Finally, since a Section 120.57(1) hearing was being held, Rule 28-5.207, Florida Administrative Code, which provides that petitions to intervene must be filed at least five days prior to the final hearing, was applicable. Therefore, the Board reasons, the optometrists' petition to intervene, which was filed three days before the May 5, 1989 Board meeting, was two days late. As additional support for its position, the Board contends that agenda item IV for the May 5, 1989 meeting should have alerted the optometrists that Board action was forthcoming.
The optometrists counter that neither the notices published in the April 14 and April 21, 1989 editions of the Florida Administrative Weekly, nor the agenda item for the May 5, 1989 meeting, nor the agency file, gave them any indication that the Board would be holding a 120.57(1) hearing at the May 5, 1989 meeting. Therefore, they argue that there was no way for them to know, even by great diligence, that they needed to file their petition five days prior to the hearing in order to avoid the procedural bar of Rule 28-5.207, Florida Administrative Code.[8]
The statute and rules relied upon by the Board must be read in conjunction with Rule 28-5.111, Florida Administrative Code, which provides:
28-5.111 Point of Entry into Proceedings. Unless otherwise provided by law or agency rule:
(1) Persons requesting a hearing on an Agency decision which does or may determine their substantial interest shall file a petition with the Agency within twenty-one (21) days of receipt of written notice of the decision, or within twenty-one (21) days of receipt of written notice of intent to render such decision; whenever possible, an Agency shall issue a written notice of intent to render a decision prior to the decision and allow persons who may be substantially affected thereby twenty-one (21) days from receipt in which to request a hearing. The notice shall state the time limit for requesting a hearing and shall reference the Agency's procedural rules.
(2) Any person who receives written notice of an Agency decision or who receives written notice of intent to render a decision and who fails to request a hearing within twenty-one (21) days, shall have waived his right subsequently to request a hearing on such matters.
(3) The Agency may publish notice of its decision, or of its intent to render a decision in the Florida Administrative Weekly, newspapers of general circulation *935 in the area affected by such decisions and may also, where appropriate, mail copies of its notice to applicants, competitors, and interested groups. Such action by the Agency may be used in establishing petitioner's date of receiving notice.
Thus, persons whose substantial interests may be affected by agency decision, such as the "final agency action" of issuance of a declaratory statement,[9] must be provided a clear point of entry into formal proceedings; i.e., a clear opportunity to file a petition for formal proceedings. See Manasota-88, Inc. v. Department of Envtl. Regulation, 417 So.2d 846 (Fla. 1st DCA 1982); Capeletti Bros., Inc. v. Department of Transp., 362 So.2d 346 (Fla. 1st DCA 1978), cert. denied, 368 So.2d 1374 (Fla. 1979).
The twenty-one day notice requirement of Rule 28-5.111 does not apply to every agency decision. The rule itself provides that different notice requirements may be prescribed by law or agency rule. Nevertheless, whether Rule 28-5.111 or some other statutory or rule notice requirement applies to a particular agency decision, the notice must be sufficient to give persons with standing to initiate 120.57 proceedings a clear point of entry to either initiate 120.57 proceedings or intervene in already existing proceedings directed to the same agency decision. Capeletti Bros., Inc. v. Department of Transp., supra, and Gulf Coast Home Health Servs. of Fla., Inc. v. Department of Health and Rehabilitative Servs., 515 So.2d 1009 (Fla. 1st DCA 1987).
Although the declaratory statement statute, Section 120.565, Florida Statutes, provides that an agency "shall give notice of each petition [for declaratory statement] in the Florida Administrative Weekly," the statute does not specify the contents of the notice. Nor do the declaratory statement rules specify the contents of the notice, other than the Rule 28-4.001 directive that the agency "shall give notice of each petition, briefly stating the question presented, in the manner prescribed by Section 120.565, F.S." Clearly, however, a declaratory statement is an "agency decision," and Section 120.565 indicates that a declaratory statement is "final agency action." Consequently, the right of persons whose substantial interests may be affected by such agency decisions are not waived, unless they have failed to petition for a 120.57 hearing within the period specified following notice given under the applicable rule.
Since no statute or rule superseded Rule 28-5.111 in the declaratory statement proceedings below, the Board was required to comply with the requirements of Rule 28-5.111 in giving notice of the declaratory statement proceedings. The published notice of the declaratory statement petition obviously failed to comply with Rule 28-5.111, in that it neither specified the time limit for requesting a hearing, nor referenced the relevant procedural rules. Further, even if the published notice of the petition for declaratory statement had complied with Rule 28-5.111, the optometrists' petition would have been timely, because it was filed just eleven days following the April 21, 1989 publication.
While it is true that a failure to timely petition to intervene in existing Section 120.57 proceedings has sometimes been held to constitute a waiver of the clear point of entry, the cases so holding are clearly distinguishable from the present case. Those cases involved failure to petition to intervene for many months, or even years, following public notice of proposed agency action or existing litigation. See, e.g., St. Joseph Hosp. of Charlotte, Fla., Inc. v. Department of Health and Rehabilitative Servs., 559 So.2d 595 (Fla. 1st DCA 1989) (three months); Inverness Convalescent Center v. Department of Health and Rehabilitative Servs., 541 So.2d 677 (Fla. 1st DCA 1989) (three years); Rudloe v. Florida Dep't of Envtl. Regulation, 517 So.2d 731 (Fla. 1st DCA 1987) (four months); Gulf Coast Home Health Servs. of Fla., Inc. v. Department of Health and Rehabilitative Servs., supra (nine months). None of these cases suggests that failure *936 to petition to intervene in existing proceedings within a period less than the notice period applicable for the particular agency decision involved will serve as a waiver of the right to a clear point of entry.
Accordingly, we hold that the Board's failure to provide the optometrists notice of the declaratory statement proceedings, in the manner prescribed by Rule 28-5.111, and an opportunity to petition for a hearing under Section 120.57 within a twenty-one day period thereafter, deprived the optometrists of the clear point of entry due persons with standing to initiate proceedings under Section 120.57. Further, we hold that the failure of the optometrists to "timely" intervene in the formal hearing proceedings, which were already under way, but of which the optometrists were not even aware, did not constitute a waiver of their right to a clear point of entry.
In McDonald v. Department of Banking and Finance, 346 So.2d 569, 577 (Fla. 1st DCA 1977), we said,
Except when an agency acts by formal rulemaking (Section 120.54) or by declaratory statement concerning the applicability of a statute, rule or order (Section 120.565), all agency action, on appropriate challenge, will mature into an order impressed with characteristics of the APA's Section 120.57.
McDonald, 346 So.2d at 577 (emphasis supplied). This language, which is followed by a discussion of the right of persons whose substantial interests are affected by agency action to a 120.57 hearing, means that Section 120.57 is generally not implicated in proceedings under Section 120.565. When a petition for declaratory statement is limited to a narrow question "as to the applicability of a specified statutory provision or of any rule or order of the agency as it applies to the petitioner in his particular set of circumstances only," Section 120.565 (emphasis supplied), there will normally be no person, other than the petitioner, who will be affected by the declaratory statement. Since a person who submits such a petition has no right to a 120.57 hearing on his petition, and since no one other than the petitioner will normally be affected by the declaratory statement, Section 120.57 is simply not applicable. However, where the question presented by the petition is not narrowly drawn, the substantial interests of other parties may be implicated. In the present case, the question presented clearly had the potential for affecting the substantial interests of persons other than the petitioners, and those persons were entitled to a clear point of entry to proceedings under Section 120.57. Therefore, it was the expansive nature of the question presented in the petition for the declaratory statement under review which made Section 120.57 and Rule 28-5.111 applicable.
For their final point on appeal, the optometrists argue that the declaratory statement is invalid, because it addresses a question of general applicability, which should properly be addressed only by rule. Section 120.52(16), Florida Statutes, provides that a "rule," subject to certain exceptions not applicable here, is "each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the organization, procedure, or practice requirements of an agency... ." (Emphasis supplied). Conversely, Section 120.565, Florida Statutes, provides that a declaratory statement is merely intended to "set out the agency's opinion as to the applicability of a specified statutory provision or of any rule or order of the agency as it applies to the petitioner in his particular set of circumstances only." (Emphasis supplied). In reliance upon these definitions and the general scheme of Chapter 120, we have held that declaratory statements may not be used as a shortcut method of announcing a rule, thereby avoiding the rule adoption procedures of Section 120.54, Florida Statutes. See Department of Professional Regulation, Bd. of Professional Engineers v. Florida Soc'y of Professional Land Surveyors, 475 So.2d 939, 943 (Fla. 1st DCA 1985); Mental Health Dist. Bd., II-B v. Florida Dep't of Health and Rehabilitative Servs., 425 So.2d 160, 162 (Fla. 1st DCA 1983); Department of Admin. v. Harvey, 356 So.2d 323, 325 (Fla. 1st DCA 1977); and Price Wise Buying Group v. Nuzum, 343 So.2d 115 (Fla. 1st DCA 1977). It is contended *937 by the optometrists that the declaratory statement under review should be set aside, because it is limited to neither a particular petitioner, nor a particular set of circumstances. While the optometrists' argument on this point may have merit, we find it unnecessary to decide the issue presented, because the declaratory statement must be set aside as a result of our holdings under the first two arguments presented.
We do observe, however, that declaratory statements and rules serve clearly distinct functions under the scheme of Chapter 120. Although the line between the two is not always clear, it should be remembered that declaratory statements are not to be used as a vehicle for the adoption of broad agency policies. Nor should they be used to provide interpretations of statutes, rules or orders which are applicable to an entire class of persons. Declaratory statements should only be granted where the petition has clearly set forth specific facts and circumstances which show that the question presented relates only to the petitioner and his particular set of circumstances. Thus, petitions which provide only a cursory factual recitation or which use broad, undefined terms, such as "vision screening equipment" and "visual acuity," should be carefully scrutinized. Similarly, petitions by associations, rather than individuals, should be inherently suspect. When an agency is called upon to issue a declaratory statement in response to a question which is not limited to specific facts and a specific petitioner, and which would require a response of such a general and consistent nature as to meet the definition of a rule, the agency should either decline to issue the statement or comply with the provisions of Section 120.54 governing rulemaking.
Accordingly, we set aside the declaratory statement and remand this cause to the Board for further proceedings in accordance with this opinion.
ZEHMER and MINER, JJ., concur.
NOTES
[1] Section 120.565, Florida Statutes.
[2] Section 484.002(3), Florida Statutes.
[3] Section 484.013(3), Florida Statutes.
[4] The final order denying the optometrists' petition did not assert an absence of disputed issues of fact, nor do the appellees so contend on appeal. See McDonald v. Department of Banking and Finance, 346 So.2d 569, 578 (Fla. 1st DCA 1977).
[5] See Section 120.52(12)(b) and the first sentence of Section 120.57.
[6] 120.565 Declaratory statement by agencies.  Each agency shall provide by rule the procedure for the filing and prompt disposition of petitions for declaratory statements. A declaratory statement shall set out the agency's opinion as to the applicability of a specified statutory provision or of any rule or order of the agency as it applies to the petitioner in his particular set of circumstances only. The agency shall give notice of each petition and its disposition in the Florida Administrative Weekly, except that educational units shall give notice in the same manner as provided for rules in s.120.54(1)(a), and transmit copies of each petition and its disposition to the committee. Agency disposition of petitions shall be final agency action.
[7] Although the Board contends that it gave notice to the opticians in accordance with the requirements of Section 120.57(1)(b)(2), a copy of such notice was not placed in the agency file, nor is a copy of such notice included in the record on appeal.
[8] Although it is not mentioned in the optometrists' brief, there was another reason why the optometrists would not have expected a 120.57(1) hearing on the petition for declaratory statement at the Board's meeting. Section 120.57(1)(a) requires formal hearings under 120.57 to be conducted by hearing officers of the Division of Administrative Hearings. Since the Board is part of the Department of Professional Regulation, the 120.57(1)(a) 1 exception to this requirement was not applicable.
[9] See Section 120.565, Florida Statutes.