711 So.2d 151 (1998)
Lawton CHILES, in his official capacity as Governor of the State of Florida, and Robert F. Milligan, in his official capacity as the Comptroller of the State of Florida, Appellants,
v.
DEPARTMENT OF STATE, DIVISION OF ELECTIONS, Appellee.
No. 97-3854.
District Court of Appeal of Florida, First District.
May 12, 1998.
*152 J. Hardin Peterson, General Counsel and Thomas Crapps, Tallahassee, for Appellant Governor Lawton Chiles.
Harry Hooper, General Counsel; Robert Beitler, Chief Counsel; Richard Donelan, Assistant *153 General Counsel, Tallahassee, for Appellant Robert F. Milligan, Comptroller.
Barry Richard of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel and Donald Bell, General Counsel, Florida Department of State, Tallahassee, for Appellee.
Dan B. Hendrickson, Kisha R. Pruitt, Tallahassee, and Peter Belmont, St. Petersburg, for Amicus Curiae Florida Consumer Action Network, Common Cause/Florida, The League of Women Voters of Florida, The Sierra Club, Florida League of Conservation Voters, Florida Public Interest Research Group, and The Florida Women's Consortium.
PADOVANO, Judge.
This is an appeal from a final declaratory statement by the Division of Elections on behalf of the Department of State. The Division determined that public funding of state political campaigns was suspended by a 1997 amendment to section 215.3206(2), Florida Statutes, the law governing the dissolution of state trust funds. We disagree and reverse.
The Florida Election Campaign Financing Act, sections 106.30-106.37, Florida Statutes, requires the state to provide public financial support for statewide political campaigns. Generally, a candidate who has received private financial contributions totaling less than the maximum for the office (five million dollars for governor and two million for a cabinet member) is entitled to receive matching funds from the state, on a one-to-one basis, for each contribution less than two hundred and fifty dollars. Section 106.32, Florida Statutes, created the Election Campaign Financing Trust Fund which served as a repository for public funds received from various sources to be used for public campaign financing.
In the 1992 general election, Florida voters approved a state constitutional amendment abolishing most of the trust funds managed by the state. Subject to exceptions not applicable here, Article III, section 19(f)(2) of the Florida Constitution provides that all trust funds must be terminated within four years from November 4, 1992, the effective date of the amendment. Section 215.3206 was enacted in 1993 to implement this constitutional directive. The Election Campaign Financing Trust Fund terminated along with other trust funds on November 4, 1996, according to Article III, section 19(f)(2), of the Florida Constitution and section 215.3206, Florida Statutes.
A related civil action for declaratory judgment was pending in the Circuit Court for the Second Judicial Circuit when the petition for declaratory statement was filed with the Division in this case. In the civil case, Secretary of State Sandra B. Mortham sought a ruling on a broader issue relating to public campaign financing. Secretary Mortham maintained that the termination of the Election Campaign Trust Fund effectively suspended public campaign financing under the Florida Election Campaign Financing Act. However, the circuit court rejected this interpretation in its final declaratory judgment.
The circuit court upheld the Florida Election Campaign Financing Act by severing the Election Campaign Financing Trust Fund from the remainder of the Act. The court reasoned that the termination of the trust fund did not render the Act inoperative, because section 106.32, Florida Statutes, contains its own authorization for the financing of election campaigns through the state's general revenue fund. We affirmed this order in Mortham v. Milligan, 704 So.2d 152 (Fla. 1st DCA 1997).
During the 1997 Session, the Legislature amended section 215.3206(2) by adding the following sentence: "No appropriation or budget amendment shall be construed to authorize any encumbrance of funds from a trust fund after the date on which the trust fund terminated or is judicially determined to be invalid." This amendment became effective on July 1, 1997, after the resolution of Secretary Mortham's declaratory judgment action. Because the amendment was not at issue in that action, it was not discussed in our opinion on appeal.
The petition for declaratory statement in the present case was filed by Commissioner of Education Frank T. Brogan who sought to determine whether the new language in section 215.3206(2), Florida Statutes, precludes certification of candidates for public campaign *154 financing. Governor Chiles and Comptroller Milligan intervened and argued that the issue was not subject to resolution by a declaratory statement because the declaration could be applied to any candidate running for a statewide office. On the merits of the controversy, the Governor and Comptroller maintained that the 1997 amendment to section 215.3206(2) had no effect on the availability of public campaign financing.
On September 23, 1997, the Division of Elections issued a final declaratory statement on Commissioner Brogan's petition. The Division reasoned that it was not bound by the circuit court's ruling in Secretary Mortham's declaratory judgment suit because the subsequent amendment to section 215.3206, Florida Statutes, requires a different result. Ultimately, the Division concluded that it could not certify Commissioner Brogan for receipt of public campaign funds because the statute no longer allows an encumbrance of funds from a terminated trust fund. This final declaratory statement is the subject of the present appeal by Governor Chiles and Comptroller Milligan.
At the outset we must determine whether the issue presented by Commissioner Brogan's petition was properly addressed by a declaratory statement. Governor Chiles and Comptroller Milligan argue that the declaratory statement was improper because the Division's ruling on the issue could be applied to any candidate for statewide office. In response, the Division contends that the declaratory statement was properly limited to Commissioner Brogan, and that the statement is not rendered invalid merely because other candidates are in the same position.
Prior versions of the Administrative Procedure Act support the Governor and Comptroller's position that a declaratory statement must be based on a unique set of facts. Section 120.565, Florida Statutes (1995), provided in part that "[a] declaratory statement shall set out the agency's opinion as to the applicability of a specified statutory provision or of any rule or order of the agency as it applies to the petitioner in his or her particular set of circumstances only" (emphasis added). This statute limited the use of a declaratory statement to an issue that could only apply to the party seeking the declaration. See, e.g., Florida Optometric Association v. Department of Professional Regulation, Board of Opticianry, 567 So.2d 928 (Fla. 1st DCA 1990) (interpreting identical language in an earlier statute).
However, the present case is subject to a less restrictive provision in the Administrative Procedure Act, as revised in 1996. Section 120.565(1), Florida Statutes (Supp.1996), states that "[a]ny substantially affected person may seek a declaratory statement regarding an agency's opinion as to the applicability of a statutory provision, or any rule or order of the agency, as it applies to the petitioner's particular set of circumstances." The deletion of the word "only" signifies that a petition for declaratory statement need not raise an issue that is unique. While the issue must apply in the petitioner's particular set of circumstances, there is no longer a requirement that the issue apply only to the petitioner.
A declaratory statement may not be employed in place of a rule to require compliance with general agency policy. See Regal Kitchens Inc. v. Florida Department of Revenue, 641 So.2d 158 (Fla. 1st DCA 1994); Tampa Electric Company v. Florida Department of Community Affairs, 654 So.2d 998 (Fla. 1st DCA 1995). If an agency is presented with a petition for a declaratory statement requiring a response that amounts to a rule, the agency should decline to issue the statement and initiate rulemaking. See Florida Optometric Association; Agency for Health Care Administration v. Wingo, 697 So.2d 1231 (Fla. 1st DCA 1997). However, a declaratory statement is not transformed into a rule merely because it addresses a matter of interest to more than one person.
The purpose of a declaratory statement is to address the applicability of a statutory provision or an order or rule of the agency in particular circumstances. See § 120.565, Florida Statutes (1996). A party who obtains a statement of the agency's position may avoid costly administrative litigation by selecting the proper course of action in advance. Moreover, the reasoning employed by the agency in support of a declaratory *155 statement may offer useful guidance to others who are likely to interact with the agency in similar circumstances. Another party can expect the agency to apply the rationale for its declaratory statement consistently, or to explain why a different application is required.
Section 120.565(2), Florida Statutes (Supp.1996), requires the agency to give notice of the filing of each petition for declaratory statement in the Florida Administrative Law Weekly. This provision accounts for the possibility that a declaratory statement may, in a practical sense, affect the rights of other parties.[1] Any substantially affected party can intervene in a declaratory statement proceeding before the agency, just as the Governor and Comptroller did in the present case.
These principles lead us to conclude that Commissioner Brogan had a right to seek a declaratory statement from the Division of Elections. He was a substantially affected party and the issue he presented was applicable to him in the particular circumstances of his case. The Division was authorized to reach the merits of the issue raised by the petition even though other statewide candidates might have also raised the same issue.
A declaratory statement by a state administrative agency is subject to judicial review by appeal. Section 120.565(3), Florida Statutes (Supp.1996), states that an agency's disposition of a petition for declaratory statement "shall be final agency action," and final agency action is reviewable by appeal under section 120.68(1), Florida Statutes (Supp.1996). An appellate court may not reverse a declaratory statement by an administrative agency unless the agency's interpretation of the law is clearly erroneous. See Regal Kitchens; Grady v. Department of Professional Regulation Board of Cosmetology, 402 So.2d 438 (Fla. 3d DCA), appeal dismissed, 411 So.2d 382 (Fla.1981).
Administrative agencies are in the best position to interpret the statutes they implement and enforce. Therefore, the courts generally defer to an agency's interpretation of its own statutes and rules. See Smith v. Crawford, 645 So.2d 513 (Fla. 1st DCA 1994); Mayo Clinic Jacksonville v. Department of Professional Regulation, Board of Medicine, 625 So.2d 918 (Fla. 1st DCA 1993). However, the courts are not required to defer to an agency's interpretation of a statute if the statute is unrelated to the functions of the agency. See Mortham v. Milligan. Here, the exception applies. Section 215.3206(2) regulates the dissolution of state trust funds for all agencies of the state government; it does not deal with the subject of elections, campaign financing, or any other issue within the jurisdiction of the Division of Elections. The Division is in no better position than the court to interpret such a statute, and so the court need not defer to the Division's interpretation.
We disagree with the Division's conclusion that section 215.3206(2), Florida Statutes (1997), effectively suspends public campaign financing. In our view, this statute merely prohibits the appropriation of money from a trust fund that has been terminated by operation of law. Because the funds necessary to implement the Public Campaign Finance Law can be appropriated from the general revenue fund, the 1997 amendment to section 215.3206(2) has no effect on Commissioner Brogan's entitlement to public campaign financing.
As the supreme court held in Republican Party of Florida v. Smith, 638 So.2d 26 (Fla.1994), section 106.32(1) of the Florida Campaign Finance Law contains its own appropriation of funds for public campaign financing. This section provides that public campaign financing shall be made through the Election Campaign Financing Trust Fund, but it also states that "additional funds shall be transferred to [the fund] from general revenue in an amount sufficient to fund qualifying candidates." The supreme court *156 held that the command to transfer funds from general revenue was the equivalent of a legislative appropriation.
The efficacy of the Public Campaign Finance Law was called into question again after the termination of the Election Campaign Financing Trust Fund. In Mortham v. Milligan, we concluded that the termination of the fund did not suspend the operation of the campaign finance law. We held that the provisions of the law creating the trust fund were severable from the provisions establishing entitlement to public financial support. Applying the rule in Smith, we held that the Campaign Finance Law can be funded by appropriations from general revenue.
Nothing in the 1997 amendment to section 215.3206(2) compels a different result. The language added in 1997 is as follows: "No appropriation or budget amendment shall be construed to authorize any encumbrance of funds from a trust fund after the date on which the trust fund is terminated or is judicially determined to be invalid." Surely the legislature did not intend to eviscerate the entire Florida Election Campaign Financing Act with this cryptic statement in the law regulating trust funds. We interpret the new language in section 215.3206(2) in the most direct sense to mean only that money left over in terminated trust funds cannot be earmarked for a special purpose. As counsel for Comptroller Milligan explained during the oral argument, the 1997 amendment is designed to protect the remnants of those trust funds that are not yet completely dissolved.
The Division could not prevail even if we were to agree that section 215.3206, Florida Statutes (1997), conflicts with Chapter 106. When one statute is alleged to be in conflict with another, the court must favor a construction that gives effect to both statutes. See DeBolt v. Department of Health and Rehabilitative Services, 427 So.2d 221 (Fla. 1st DCA 1983). The court should not presume that a new law was designed to render an existing law meaningless. See Oldham v. Rooks, 361 So.2d 140 (Fla.1978); Barnett Bank of South Florida v. Department of Revenue, 571 So.2d 527 (Fla. 3d DCA 1990). In the absence of an irreconcilable conflict between the statutes, we would be compelled to give meaning to both and to hold that section 215.3206(2) did not repeal the Florida Election Campaign Financing Law by implication. The Election Campaign Financing Act remains in force, and we take that to mean that the legislature is still firmly committed to its purpose.
Commissioner Brogan suggests that the legislature may have intended to retain the Election Campaign Finance Act but to activate its provisions only in those years in which funding is made available by appropriation. We reject that interpretation, as well. The Election Campaign Financing Act was designed to open the election process to those who are not independently wealthy and to minimize the adverse influence of special interest groups. See § 106.31 Fla. Stat. (1997). It would be illogical to assume that the legislature wished to accomplish these objectives in some election years but not in others.
For these reasons, we conclude that the Division properly addressed the merits of the issue raised in Commissioner Brogan's petition for declaratory statement. On the merits, we hold that the Division's interpretation of section 215.3206(2) Florida Statutes (1997), is clearly erroneous. Therefore, we reverse with instructions to vacate the declaratory statement.
Reversed.
ERVIN and BENTON, JJ., concur.
NOTES
[1] The notice provision in section 120.565, Florida Statutes, (1996) suggests that a declaratory statement, although not binding as precedent, has at least some "precedential significance." See Arthur J. England, Jr., L. Harold Levinson, and Johnny C. Burris, Florida Administrative Practice Manual, § 10.01(d) (Supp.1997).