816 So.2d 1237 (2002)
Kenneth NOVICK, M.D., etc. et al., Appellants,
v.
DEPARTMENT OF HEALTH, BOARD OF MEDICINE, Appellee.
No. 5D01-2029.
District Court of Appeal of Florida, Fifth District.
May 31, 2002.
Anthony Deglomine, III and Nichole M. Mooney, of Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., Orlando, for Appellants.
*1238 Robert A. Butterworth, Attorney General, and M. Catherine Lannon and Lee Ann Gustafson, Assistant Attorneys General, Tallahassee, for Appellee.
SHARP, W., J.
Novick, M.D., as President of New Interlachen Pediatrics, P.A. ("Interlachen") appeals from an order rendered by the Department of Health, Board of Medicine ("Board"), which declined to determine whether a management service contract entered into between Interlachen and Pediatric Physician Alliance, Inc. ("PPA"),[1] violates Florida law. The Board took the position that it was not required to make a ruling on the legality of the contract in light of its recent holding In re Petition for Declaratory Statement of Magan L. Bakarania, M.D., 20 F.A.L.R. 395 (Nov. 3, 1997), and that this case involves primarily a contract dispute between the parties. We affirm.
The facts in this case are not in dispute, only their implications. In November of 1997, the Board determined in Bakarania, a case not related to this one, that a percentage management fee paid to a practice management company by doctors was an impermissible split-fee arrangement, which violates Florida law. The final order in Bakarania precludes:
[P]aying or receiving any commission, bonus, kickback, or rebate, or engaging in ... any split-fee arrangement in any form whatsoever with a physician, organization, agency, or person, either directly or indirectly, for patients referred to providers of health care, goods and services ...
Further, the Order notes that section 817.505(1)(a) makes it unlawful for any person, including a health care provider, to "offer or pay any commission, bonus, rebate, kickback or bribe, directly or inadvertently, in cash or in kind, or engage in any split-fee arrangement, in any form whatsoever to induce the referral of patients or patronage from a health care provider or health care facility." Finally, the Order declared that payment of fees which are based on revenue generated, at least in part because of referrals, is a violation of section 458.331(1)(k), Florida Statutes. Payment of a reasonable flat fee in return for the provision of management services, including practice enhancement, the Board declared, is appropriate and permissible under Florida law.
This order distinguished a line of cases from the second district, which held that contracts with a management company calling for payment of a flat fee or a specific percentage of gross income, whichever is greater, are not traditional fee-splitting arrangements and thus do not violate the fee-splitting prohibition. See Practice Management Associates, Inc. v. Bitet, 654 So.2d 966 (Fla. 2d DCA 1995); Practice Management Associates, Inc. v. Gulley, 618 So.2d 259 (Fla. 2d DCA 1993); Practice Management Associates, Inc. v. Orman, 614 So.2d 1135 (Fla. 2d DCA 1993). The Board said the contracts in those cases involved management services but did not identify, as an obligation of the management company, any activity that could be construed as providing more extensive referrals of patients. The contract in Bakarania required the creation of a physician provider network, the development of relationships and affiliations with other provider networks, the development of ancillary services (including pharmacy, laboratory and diagnostic services), and *1239 the evaluation, negotiation and administration of managed care contracts. Each of those activities was involved in the development of a greater number of referrals.
Interlachen and PPA entered into their contract while the Bakarania decision was on appeal to the first district. It was affirmed on June 25, 1999. See Phymatrix Management Co., Inc. v. Bakarania, 737 So.2d 588 (Fla. 1st DCA 1999). Pursuant to the contract in this case, Interlachen sold its assets to PPA, receiving compensation in stock and money. In return, PPA is required to provide Interlachen with management and operational services, including providing offices and facilities, equipment, support personnel, and financial advisory services. Interlachen must pay PPA two fees: the operational fee, which reimburses costs and expenses of operations; and a monthly management/performance fee, which is equal to 15 percent of Interlachen's monthly net operating income (net profits before physician compensation).
Some provisions were drafted with Bakarania apparently in mind. Section 1.5 provides the contract is not intended to induce or encourage the referral of patients, or payment directly or indirectly of any remuneration to the doctors. Additionally, section 9.8 provides the payment of fees and purchase of accounts receivable is not intended to permit PPA to share in Interlachen's fees for medical services, but was negotiated as a reasonable fair market value of the contract to compensate PPA for services rendered and the risks assumed. And, section 6.18, entitled "No Warranty" states Interlachen acknowledges PPA has not made any representations that the services it is to provide will result in any particular amount or level of medical practice, or income to Interlachen.
Other provisions of the contract indicate that increased business and revenue through growth is contemplated by the agreement. Section 6.4 provides that PPA will assist Interlachen to expand the Clinic facilities through the addition of new physicians, equipment and facilities, and that PPA will use its efforts to support recruitment of physician employees and acquire additional equipment and facilities.
On July 11, 2000, Interlachen filed a petition for declaratory relief, pursuant to section 120.565, with the Board. It alleged that as a result of the Bakarania affirmance in the first district, the legality of its contract with PPA is unclear because of the management fee arrangements with PPA, and thus a finding by the Board that it is illegal could subject the doctors involved in Interlachen to disciplinary action by the Board. Section 120.565(1) provides that a substantially affected person may seek a declaratory statement regarding an agency's opinion as to the applicability of a statutory provision, or of any rule or order of the agency, as it applies to the petitioner's particular set of circumstances.
The Board held a hearing and issued its final order on June 20, 2001. At the hearing, the testimony from Interlachen established that at the time the contract was entered into, there was a dispute between PPA and the attorney for Interlachen as to whether Bakarania would be sustained on appeal.[2] The contract was changed to permit a party to terminate the agreement should any order of the Board materially increase a party's obligation or materially reduce a party's rights. However, there was also a severe penalty repurchase obligation for Interlachen during the first few years of the contract, unless there was a "legislative amendment."
*1240 Various Board members pointed out that the Bakarania decision was based on a 1992 case and thus was not new law. Another pointed out that Interlachen had taken no action to resolve the problem for a year and a half. Dr. Lacy, a member of Interlachen, admitted the group of doctors had not been happy with the contract with PPA for other reasons. The Board learned Interlachen had sought a declaration of its rights under the contract by filing a lawsuit then pending in Seminole County Circuit Court. In its order denying Interlachen's petition, the Board held:
The Petition appears to involve a contract dispute between the Petitioner and the practice management company. The Board is reluctant to review every contract in light of its ruling in In Re Petition for Declaratory Statement of Magan L. Bakarania, M.D., 20 FALR 395.
Review of a final agency order by this court is brought pursuant to section 120.68, and the standard of review is whether the agency's interpretation of the law is clearly erroneous. See Florida Municipal Power Agency v. Dept. of Revenue, 764 So.2d 914, 916 (Fla. 1st DCA 2000), approved, 789 So.2d 320 (Fla.2001); Regal Kitchens, Inc. v. Florida Dept. of Revenue, 641 So.2d 158, 162 (Fla. 1st DCA 1994); Grady v. Dept. of Prof. Reg., Board of Cosmetology, 402 So.2d 438 (Fla. 3d DCA 1981). We do not think the Board is required to rule on the merits of every petition seeking a declaration of rights of a party under a contract, which may be affected by its ruling in a prior case. In this case, there were valid reasons not to do so.
The Board had already announced its decision on these types of arrangements in Bakarania, and therefore, Interlachen was not seeking direction based on a new rule or law. This decision was known to the parties before they entered into their current contract. Although there may be valid exceptions, a petition for a declaratory statement which seeks approval or disapproval of conduct which has already occurred is properly denied. Chiles v. Department of State, Division of Elections, 711 So.2d 151 (Fla. 1st DCA 1998). See also In re Julian A. Harris, Jr., 11 F.A.L.R. 3770 (Fla.Dept.Envir.Reg.1989)(dismissal of petition for declaratory statement where it requested ruling on previously committed act). The purpose of a declaratory statement is to allow a petitioner to select a proper course of action in advance. In Chiles, the first district described the benefit of declaratory statements as avoiding "costly administrative litigation by selecting the proper course of action in advance." Chiles at 154, cited with approval Florida, Department of Business & Professional Regulation, Division of Pari-Mutuel Wagering v. Investment Corporation of Palm Beach, 747 So.2d 374 (Fla. 1999).
Further, a declaratory statement is not an appropriate remedy where there is related pending litigation, as in this case. Couch v. Florida Dept. of Health and Rehabilitative Services, 377 So.2d 32 (Fla. 1st DCA 1979). In Couch, the first district upheld a refusal to issue a declaratory statement which was based on the fact that there was already a court proceeding. See also Fox v. State, Board of Osteopathic Medical Examiners, 395 So.2d 192 (Fla. 1st DCA 1981) (appropriate to deny petition for declaratory statement where issues raised currently pending in administrative hearings).
AFFIRMED.
THOMPSON, C.J., and PALMER, J., concur.
NOTES
[1] The Agreement was originally entered into between Interlachen and Interlachen Pediatrics, Inc., whose successor is PPA.
[2] The first district affirmed in a two sentence per curiam opinion because the appellant did not show that the Board's interpretation of the law was clearly erroneous. Phymatrix Management Co., Inc. v. Bakarania, 737 So.2d 588 (Fla. 1st DCA 1999).