IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

SOCIETY FOR CLINICAL AND
MEDICAL HAIR REMOVAL,
INC. (SCMHR),

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

Appellant,

CASE NO. 1D14-5234

v.

DEPARTMENT OF HEALTH,
BOARD OF MEDICINE,

Appellee.

_____/

Opinion filed December 31, 2015.

An appeal from the Department of Health.

Jon M. Pellett of Barr, Murman & Tonelli, P.A., Tampa; Dinah S. Stein of Hicks, Porter, Ebenfeld & Stein, P.A., Miami, for Appellant.

Pamela Jo Bondi, Attorney General, and Marlene K. Stern, Assistant Attorney General, Tallahassee, for Appellee.


WETHERELL, J.

In this administrative appeal, Society for Clinical and Medical Hair Removal, Inc. (SCMHR), seeks review of a declaratory statement issued by the Board of Medicine. SCMHR argues that we should reverse the declaratory statement because

it (1) misinterprets the applicable statutes and rules to require only one-time certification of electrologists who use lasers or light-based devices for hair removal, and (2) exceeds the proper scope of a declaratory statement in that it announces a broad new policy that constitutes an unadopted rule. We find no merit in either claim. Accordingly, we affirm the declaratory statement.

## FACTUAL AND PROCEDURAL BACKGROUND

SCMHR is a national trade association of electrologists.[1] It also offers the only Board-approved certification program for electrologists in Florida. The program includes a Certified Clinical Electrologist (CCE) certification for electrologists using epilators (a needle-based device) and a Certified Medical Electrologist (CME) certification for electrologists using lasers or light-based devices. SCMHR advises electrologists that the CCE and CME certifications are valid for five years, after which the electrologist must be re-certified, either by examination or by proof of continuing education.

In April 2014, SCMHR filed a petition with the Board seeking a declaratory statement as to whether "its members must obtain and maintain [CME] certification in the use of laser and light-based devices to continue utilizing [such] devices for

---

[1] An electrologist is "a person who engages in the practice of electrolysis." § 478.42(4), Fla. Stat. (2014). Electrolysis is the permanent removal of hair by destroying the hair-producing cells of the skin and vascular system through the use of a laser or other approved device. § 478.42(5), Fla. Stat. (2014).

hair removal or reduction." The petition alleged that SCMHR's members were in doubt as to whether the Board's rules require electrologists to have "current CME certification" or whether the rules only require them to have initial certification without the need for re-certification every five years. The petition further alleged that the uncertainty on this issue put SCMHR members "in jeopardy for license discipline for any non-compliance with the Board's rules."

The Board referred the petition to the Electrolysis Council[2] for a recommendation as to the appropriate action to be taken. See Fla. Admin. Code R. 64B8-50.003(2) ("Rulemaking proposals, petitions for declaratory statement[3] and petitions to adopt, amend or repeal rules, which relate to the practice of electrology shall first be presented to the Council. The Council shall consider the matter and make recommendations to the Board as to the appropriate action to be taken."). After a hearing, the Council recommended that the Board issue a declaratory statement explaining that its rules only require a one-time CME certification of electrologists who use lasers and light-based devices for hair removal.

In August 2014, after receiving the Council's recommendation, the Board

---

[2]  The Council is "under the supervision of the [B]oard" and is comprised of five members – three licensed electrologists and two consumers – appointed by the Board. See § 478.44(1)-(2), Fla. Stat. (2014).
[3]  The portion of the rule requiring petitions for declaratory statement to be first presented to the Council was invalidated by an Administrative Law Judge in May 2015 based on a rule challenge petition filed by SCMHR. The Board's appeal of that ruling is pending in case number 1D15-2308.

held a hearing on the petition. At the conclusion of the hearing, the Board voted to issue a declaratory statement consistent with the Council's recommendation. The Board also voted to initiate rulemaking "[t]o go ahead and clarify in the rule that continual certification is not required in order to do laser hair removal."[4]

A few days after the Board's vote, SCMHR filed a request to withdraw its petition for declaratory statement. In support of the request, SCHMR argued that a declaratory statement was no longer needed based on the Board's stated intent to initiate rulemaking. It also asserted that the draft declaratory statement proposed by staff amounted to an "un-promulgated rule." The attorney for the Council argued against the request, pointing out that it was not made until <u>after</u> the Board voted to approve the declaratory statement and noting that the statement would "put to rest an issue that has been controversial for a very long time"[5] and maintain the "status quo" pending the rulemaking process. The Board denied SCMHR's request to

---

[4] The record does not reflect the status of the rulemaking process, but it appears from notices published in the <u>Florida Administrative Register</u> that the process has commenced. <u>See</u> 40 Fla. Admin. Reg. 5010 (Nov. 14, 2014) (notice of workshop concerning "[r]evisions to training, practice and safety requirements for use of laser equipment and epilators"); 41 Fla. Admin. Reg. 383-84 (Jan. 21, 2015) (notice of workshop concerning "[r]evisions to rules on: training, practice and safety requirements for use of laser equipment and epilators; and, requirement for certification by [SCMHR] and any other entity").

[5] The record reflects that this issue has been percolating since at least December 2011 when the Council voted not to recommend an amendment to Florida Administrative Code Rule 64B8-56.002(2)(b) that would have expressly prohibited electrologists from using laser or light-based devices for hair removal "unless they are <u>currently certified</u> in the use of [such] devices." (emphasis added).

withdraw its petition[6] and then voted to approve the staff-proposed declaratory statement.

In October 2014, the Board formally issued the declaratory statement, which provides in pertinent part:

> The Board first notes that no rule or statute expressly requires that the CME credential be continually updated. The cited rules and statutes can only be harmonized if the CME certification is obtained once, after the electrologist has taken the laser training course required by Rule 64B8-52.004(2), and before he or she begins to offer laser hair removal to the public.
>
> Rule 64B8-56.002(2)(b), Florida Administrative Code, is the provision that actually sets the requirement to obtain CME certification, and that rule uses the past tense[7] ("[h]ave been certified"), indicating a CME credential does not have to be continually updated. The rule governing inspection of electrology facilities where lasers are used (64B8-51.006), and the citation rule (64B8-55.002), each require proof of certification to be present in the facility at all times, thus the present tense is used. The requirement to obtain a CME certification and the requirement to have proof of having obtained CME certification are two different things. Thus, the past tense is used in Rule 64B8-56.002(2)(b) for the one-time certification requirement to obtain the CME certification, and the present tense is used in Rules 64B8-51.006 and 64B8-55.002 for the ongoing requirement to show proof of having obtained CME certification.
>
> *    *    *

---

[6] SCMHR does not challenge this ruling on appeal.

[7] Actually, the rule uses the passive form of the present perfect tense. See William A. Sabin, The Gregg Reference Manual ¶ 1033, at 272 (10th ed. 2005) (explaining that the present perfect tense consists of the verb "have" plus a past participle).

5

> This interpretation comports with another important aspect of the regulation of electrologists, specifically the requirement for continuing education.
>
> Section 476.50(4)(a), Florida Statutes, establishes a 20 hour continuing education . . . requirement for license renewal each biennium, whether the practitioner uses laser or epilator equipment. . . .
>
> [SCMHR] states that the CME tests for advanced knowledge and skill. See Petition at ¶ 5. If licensed electrologists pass the CME certification test, then the continuing education requirement in Chapter 476 is sufficient to and intended to enable electrologists to maintain their skills in and knowledge of laser usage.
>
> For all of the foregoing reasons, electrologists who wish to use laser or light-based equipment are required to obtain the CME certification one time and have proof of having obtained that certification present at all times.

This appeal followed.

## ANALYSIS

We begin our analysis with the second issue raised by SCMHR in its brief because that issue involves the threshold question of whether the Board should have issued a declaratory statement. If SCMHR prevailed on that issue, we would not need to address the first issue raised in the brief regarding the merits of the declaratory statement. However, because we find that the Board properly issued the declaratory statement, we conclude our analysis with an assessment of the merits of the declaratory statement.

6

### *Board's Authority to Issue the Declaratory Statement*

SCMHR's argument that the declaratory statement exceeds the proper scope of a declaratory statement because it announces a broad new policy that amounts to an unadopted rule presents a pure question of law, which we review *de novo*. See Lennar Homes, Inc. v. Dep't of Bus. & Prof'l Reg., 888 So. 2d 50, 53-54 (Fla. 1st DCA 2004).

"The purpose of a declaratory statement is to resolve a controversy or answer questions concerning the applicability of statutes, rules, or orders which an administrative agency enforces, adopts or enters." Citizens of the State ex rel. Office of Pub. Counsel v. Fla. Pub. Serv. Comm'n, 164 So. 3d 58, 59 (Fla. 1st DCA 2015); see also Patricia A. Dore, Access to Florida Administrative Proceedings, 13 Fla. St. U.L. Rev. 965, 1052 (1986) (explaining that the declaratory statement procedure "enable[s] members of the public to definitively resolve ambiguities of law arising in the conduct of their daily affairs or in the planning of their future affairs and . . . enable[s] the public to secure definitive binding advice as to the applicability of agency-enforced law to a particular set of facts") (internal quotations and footnotes omitted).

Prior to 1996, the authority of an agency to issue a declaratory statement was limited to issues that applied only to the party seeking the declaration because section 120.565, Florida Statutes (Supp. 1978-1995), provided that the declaratory statement

7

shall set out the agency's opinion as to the applicability of a statute or rule "to the petitioner in his or her particular set of circumstances <u>only</u>." (emphasis added). The cases construing the pre-1996 version of the statute recognized this limitation on agency authority to issue declaratory statements. <u>See, e.g.</u>, <u>Regal Kitchens, Inc. v. Fla. Dep't of Rev.</u>, 641 So. 2d 158, 161-62 (Fla. 1st DCA 1994) ("[Section 120.565, Florida Statutes (1989)] limits the use of a declaratory statement to an expression of the agency's position on an issue raised by an individual petitioner in a particular set of facts."); <u>Fla. Optometric Ass'n v. Dep't of Prof'l Reg.</u>, 567 So. 2d 928, 937 (Fla. 1st DCA 1990) (stating in dicta that "[d]eclaratory statements should only be granted where the petition has clearly set forth specific facts and circumstances which show that the question presented relates only to the petitioner and his particular set of circumstances").

In 1996, the word "only" was deleted from section 120.565, <u>see</u> ch. 96-159, § 17, Laws of Fla., and in <u>Chiles v. Department of State</u>, 711 So. 2d 151, 154 (Fla. 1st DCA 1998), we construed this change to mean that "a petition for declaratory statement need not raise an issue that is unique" and that "there is no longer a requirement that the issue apply only to the petitioner." We went on to explain that that although a declaratory statement cannot be used to circumvent rulemaking,[8] "a

---

[8] On this point, we cited <u>Florida Optometric Association</u> in which we observed in dicta that:

8

declaratory statement is not transformed into a rule merely because it addresses a matter of interest to more than one person." Id. Our decision in Chiles was subsequently approved by the Florida Supreme Court in Florida Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering v. Investment Corp. of Palm Beach, 747 So. 2d 374 (Fla. 1999).

The agency in Investment Corp. was asked to issue a declaratory statement by a group of pari-mutuel racetracks. See Inv. Corp. of Palm Beach v. Div. of Pari-Mutuel Wagering, 714 So. 2d 589, 590 (Fla. 3d DCA 1998). The declaratory statement addressed the substance of the issue raised by the racetracks but also stated that the agency intended to initiate rulemaking because the issue had general application to the pari-mutuel industry. Id. The racetracks appealed, arguing that

> declaratory statements and rules serve clearly distinct functions under the scheme of Chapter 120. Although the line between the two is not always clear, it should be remembered that declaratory statements are not to be used as a vehicle for the adoption of broad agency policies. Nor should they be used to provide interpretations of statutes, rules or orders which are applicable to an entire class of persons. . . . When an agency is called upon to issue a declaratory statement . . . which would require a response of such a general and consistent nature as to meet the definition of a rule, the agency should either decline to issue the statement or comply with the provisions of Section 120.54 governing rulemaking.

567 So. 2d at 937 (emphasis in original).

9

the agency "overstepped administrative bounds" when it issued the declaratory statement after concluding that the issues raised by racetracks had general applicability and required rulemaking. Id. at 590-91. The Third District agreed and reversed the declaratory statement. Id. at 591

Judge Cope dissented. He first pointed out that the racetracks invited the error that they raised on appeal. Id. at 592 (Cope, J., dissenting) ("The racetracks asked for a declaratory statement. The racetracks got a declaratory statement."). He then explained that section 120.565 would be "nearly useless" if a declaratory statement could not be issued if it impacted anyone other than the petitioner. Id. at 593. Then, relying on Chiles, he concluded that the agency's decision to contemporaneously initiate rulemaking "was a perfectly permissible step to take, but it did not thereby invalidate the declaratory statement." Id. (citing Chiles, 711 So. 2d at 153-54).

The Florida Supreme Court quashed the Third District's decision and adopted Judge Cope's dissenting opinion as the "correct view" of the law. Investment Corp., 747 So. 2d at 386. The Court explained that the 1996 amendments to section 120.565 were "meant to dispel any confusion that only the most narrowly drawn declaratory statement having an absolutely unique application was permissible." Id. at 383. The Court also expressly rejected the proposition that an agency could decline to issue a declaratory statement simply because it intended to initiate rulemaking. Id. at 385. On this point, the Court explained that:

10

> it elevates form over substance to assert that an agency cannot issue a declaratory statement dealing with a petitioner's 'particular set of circumstances,' while at the same time indicating that 'a similar fact pattern may exist' in other circumstances and announcing its intention to 'initiate rulemaking to establish an agency statement of general applicability.' . . . . <u>We are not aware of any rule of law that precludes an agency from simultaneously pursuing both courses of action.</u>

<u>Id.</u> (emphasis added).

In short, <u>Investment Corp.</u> stands for the proposition that an agency has an obligation to issue a declaratory statement explaining how a statute or rule applies in the petitioner's particular circumstances even if the explanation would have a broader application than to the petitioner. But, if the statement has such a broad and general application that it meets the definition of a rule, the agency must also simultaneously initiate the rulemaking process to adopt the statement as a rule. <u>See</u> § 120.54(1)(a), Fla. Stat. (2014) (stating that rulemaking is not a matter of agency discretion and requiring agencies to adopt statements that meet the definition of a rule as soon as it is feasible and practicable to do so).

Here, the Board did precisely what was contemplated by the Court in <u>Investment Corp.</u> when it answered the specific question raised in SCMHR's petition for declaratory statement and simultaneously announced its intention to initiate rulemaking on the subject. The fact that SCMHR does not like the answer it got in response to its petition does not mean that the Board exceeded its authority in

11

issuing the declaratory statement in this case. Indeed, if SCMHR was of the view that the issue raised in its petition could only be addressed by rulemaking, it should have petitioned for rulemaking under section 120.54(7) instead of a declaratory statement under section 120.565. See Investment Corp., 747 So. 2d at 385-86.

In ExxonMobil Oil Corp. v. Department of Agriculture and Consumer Services, 50 So. 3d 755 (Fla. 1st DCA 2010), we reversed an order dismissing a petition for declaratory statement seeking clarification of a statute enforced by the agency. In doing so, we observed that the agency's refusal to answer the question raised in the petition "serves no logical end and thwarts the purpose behind section 120.565 by foreclosing [the petitioner] from securing 'definitive binding advice as to the applicability of agency-enforced law to a particular set of facts.'" Id. at 758 (quoting Investment Corp., 747 So. 2d at 382). The same would have been true here had the Board refused to issue the declaratory statement in response to the petition filed by SCMHR.

Our decision in Lennar Homes is not contrary authority. It is distinguishable from this case. The agency in Lennar Homes not only announced a "broad agency policy" that prohibited the use of arbitration provisions in all condominium purchase and sale contracts statewide, but it went further and purported to invalidate the petitioner's contract. See 888 So. 2d at 54-55 ("In the case before us, the [agency] went beyond applying the condominium statutes to [petitioner]'s contract and ruled

12

that the contract language requiring arbitration was void against public policy. We know of no statute which confers authority on the [agency] to declare a party's contract void."). Here, the declaratory statement issued by the Board only addressed the question framed by the petition and its scope is limited to electrologists using lasers or light-based devices. Moreover, unlike the agency in Lennar Homes, which had not announced its intention to institute rulemaking, see id. at 54, the Board voted to initiate rulemaking on the subject addressed in the declaratory statement contemporaneously with its vote to issue the declaratory statement.

### *Merits of the Declaratory Statement*

Turning to the merits of the declaratory statement, we apply a deferential standard of review: "[a]n appellate court may reverse a declaratory statement only if the agency's interpretation of the law is clearly erroneous." Thrivent Fin. for Lutherans v. Dep't of Fin. Servs., 145 So. 3d 178, 181 (Fla. 1st DCA 2014). An agency's interpretation of an ambiguous statute or rule that it administers is not clearly erroneous if it "'is within the range of possible and reasonable' interpretations." Office of Fire Code Official v. Fla. Dep't of Fin. Servs., 869 So. 2d 1233, 1237 (Fla. 2d DCA 2004) (quoting Republic Media, Inc. v. Dep't of Transp., 714 So. 2d 1203, 1205 (Fla. 5th DCA 1998)).

Here, we have no trouble concluding that the Board's legal analysis in the declaratory statement is not clearly erroneous. First, no statute or rule expressly

13

requires electrologists using laser or light-based devices to have a "current" CME certification. Second, even if the use of the passive form of the present perfect tense in the phrase "have been certified" results in a slight grammatical ambiguity in rule 64B8-56.002(2)(b) because that tense can be used to indicate "action that was started in the past and has been recently completed <u>or</u> [action that] is continuing up to the present time," <u>see</u> <u>The Gregg Reference Manual</u>, <u>supra</u>, ¶ 1033, at 272 (emphasis added), we cannot say that the Board's interpretation of the rule falls outside of the range of possible interpretations. Indeed, we find that the Board's interpretation gives rule 64B8-56.002(2)(b) its most logical and natural reading and that the Board's harmonization of that rule with the other rules and statutes discussed in the declaratory statement comports with logic and reason.

That said, we are not unsympathetic to the policy arguments advanced by SCMHR in support of a requirement that electrologists using laser and light-based devices maintain a current CME certification. Indeed, there appear to be valid policy arguments for and against such a requirement. However, these policy arguments are more appropriately directed to the Board in the rulemaking process because this court does not have the authority to make policy or to second-guess the wisdom of the policy embodied in the Board's rules.

14

## CONCLUSION

For the reasons stated above, we affirm the declaratory statement issued by the Board in response to the petition filed by SCMHR.

AFFIRMED.

RAY and KELSEY, JJ., CONCUR.