819 So.2d 200 (2002)
FLORIDA WILDLIFE FEDERATION and Collier County Audubon Society, Appellants,
v.
COLLIER COUNTY, Florida; State of Florida, Department of Community Affairs; James A. Brown, Jr., as Trustee of East Naples Land Company; Barron Collier Partnership; Collier Enterprises, Ltd.; Consolidated Citrus Limited Partnership; Pacific Tomato Growers; Alico, Inc.; and Jack Price and Russell Priddy, individually and jointly as Eastern Collier Property Owners, Appellees.
No. 1D01-1299.
District Court of Appeal of Florida, First District.
May 28, 2002.
*201 Thomas W. Reese, St. Petersburg, for Appellants.
Martha Harrell Chumbler and Nancy G. Linnan of Carlton Fields, P.A., Tallahassee, and Marjorie M. Student, Assistant County Attorney, Naples, for Appellee Collier County; Jack J. Aiello, Ernest A. Cox and Patrick W. Maraist of Gunster, Yoakley & Stewart, P.A., West Palm Beach, for Appellee Eastern Collier Property Owners; Cari L. Roth, General Counsel, Shaw P. Stiller, Assistant General Counsel, Department of Community Affairs, Tallahassee, for Appellee Department of Community Affairs.
ERVIN, J.
The Florida Wildlife Federation and the Collier County Audubon Society, appellants, appeal from a final order of the Department of Community Affairs, appellee, which approved a recommended order from the Division of Administrative Hearings finding amendments to the Collier County comprehensive plan to be in compliance with state law. We affirm.
In 1997, appellee, Collier County, promulgated certain amendments to its comprehensive plan, but the Department of Community Affairs rejected those amendments as not in compliance with state law. Following an administrative challenge in which appellants intervened, the Governor and Cabinet, sitting as the Administration Commission, issued a final order directing the County to take specific remedial measures with regard to its plan, one of which was that the County designate certain specified areas within the county as Natural Resource Protection Areas (NRPAs). The principal purpose of this designation is to protect indigenous fauna and flora, especially the Florida panther, a highly endangered species. The final order provided further that the NRPAs "shall be refined as actual data and analysis is made available." The Commission finally directed that within the NRPAs "only agricultural and directly-related uses and one single family dwelling unit per parcel or lot created prior to June 22, 1999, shall be allowed."
Pursuant to the order, Collier County adopted certain interim amendments to its comprehensive plan, including amendments which designated as NRPAs those areas specifically identified in the Administration *202 Commission's final order. The Department reviewed the amendments and determined that they were in compliance with state law. Appellants subsequently challenged that determination, and the matter proceeded to a formal hearing before the Division of Administrative Hearings.
In the recommended order which followed, the administrative law judge (ALJ) discussed in detail the mapping of the NRPAs. Appellants sought expansion of these areas, based upon telemetry data gathered regarding the movement of panthers and upon a 1994 report prepared by the Florida Fish and Wildlife Commission. In rejecting the argument that the NRPA boundaries were not sufficient to protect wildlife and were not based on a thorough assessment, the ALJ observed that "the 1999 Final Order [of the Administration Commission] contemplates that the Interim NRPAs are a necessary prelude to that very assessment." He added that appellants, in effect, had asked "the County to reach its conclusions as to the natural resource issues before it undertakes the Assessment mandated by the Final Order... [and such a] request is impracticable." Appellants thereafter took exception to the ALJ's recommended conclusion that the agricultural usage of land was not subject to an intensity-of-use standard. The Department rejected this exception in its final order, which adopted the ALJ's findings of fact and conclusions of law.
On appeal, appellants argue, as they did before the Department, that the NRPAs, as designated in the interim amendments, do not comply with section 163.3177(6)(a), Florida Statutes (1999).[1] More particularly, appellants maintain that this statute, as well as case law and the Department's rule, require application of an "intensity" standard as to agricultural uses contained within the NRPAs. Appellants also claim that the record evidence does not establish, "beyond fair debate," that the NRPA's boundaries do not require further expansion to protect the Florida panther, as the ALJ found and as the Department accepted in its final order.
Turning to the first issue, appellants rely primarily on the following emphasized language in section 163.3177(6), which provides, in pertinent part:
(6) In addition to the requirements of subsections (1)-(5), the comprehensive plan shall include the following elements:
(a) A future land use plan element designating proposed future general distribution, location, and extent of the uses of land for residential uses, commercial uses, industry, agriculture, recreation, conservation, education, public buildings and grounds, other public facilities, and other categories of the public and private uses of land. The future land use plan shall include standards to be followed in the control and distribution of population densities and building and structure intensities. The proposed distribution, location, and extent of the various categories of land use shall be shown on a land use map or map series which shall be supplemented by goals, policies, and measurable objectives. Each land use category shall be defined in terms of the types of uses included and specific standards for the density or intensity of use.

(Emphasis added.)
Appellants observe that the above statute explicitly requires a designation of the "extent of the uses of land for ... agricultural... uses of land," and further that each land use, including agriculture, must *203 be reviewed pursuant to "standards for the density or intensity of use." Because of this language, they contend the approved interim NRPA amendments are not in compliance with the statutory directives because there is no standard within them regulating the intensity of an agricultural use.
Appellants also point out that the Department's own rule, Florida Administrative Code rule 9J-5.003(60), requires designation of an intensity standard, because this rule defines "intensity" as:
[A]n objective measurement of the extent to which land may be developed or used, including the consumption or use of the space above, on or below ground; the measurement of the use of or demand on natural resources; and the measurement of the use of or demand on facilities and services.
(Emphasis added.) Appellants continue that the language in the rule clearly reflects that the use of the term "intensity" within the statute does not refer solely to buildings and structures, contrary to the Department's non-rule policy decision. Consequently, the Department's order violates not only the statute but its own rule in failing to apply an intensity-of-use standard to an agricultural land use category.
The Department of Community Affairs, Collier County and other appellees argue in response that the term "intensity" is applicable only to the presence of buildings and structures, as provided in subsection (a) of the statute. Moreover, because buildings and structures are incompatible with the agricultural use of land, there is no corresponding necessity for imposing an intensity standard on a land use designated agricultural within the NRPAs.
In that the legislature delegated to the Department the power to enforce section 163.3177, we note that we are required to be highly deferential to the agency's interpretation of such statute. As the supreme court recently reaffirmed in Verizon Florida, Inc. v. Jacobs, 810 So.2d 906 (Fla.2002), an "agency's interpretation of the statute it is charged with enforcing is entitled to great deference." See also BellSouth Telecomms., Inc. v. Johnson, 708 So.2d 594, 596 (Fla.1998). Moreover, a court will not depart from the contemporaneous construction of a statute by a state agency charged with its regulation unless the construction is "clearly erroneous." PW Ventures, Inc. v. Nichols, 533 So.2d 281, 283 (Fla.1988). Accord Miles v. Fla. A & M Univ., 813 So.2d 242 (Fla. 1st DCA 2002).
The interpretation the Department has given section 163.3177(6)(a) is not clearly erroneous. Although certain isolated portions of the statute support appellants' argument that all land use categories must be subjected to an intensity-of-use standard, an established statutory maxim emphasizes that all parts of a statute should be given effect in order to achieve a harmonious whole. See State v. Knight, 98 Fla. 891, 124 So. 461 (1929). Not only do the provisions within section 163.3177(6)(a) undergird the Department's interpretation that an agricultural use of land is excluded from an intensity review, but other pertinent statutes do as well.
Section 163.3177 is included within the Local Government Comprehensive Planning and Land Development Regulation Act.[2] A primary purpose of the Act is that it be carried out in conformity with and in furtherance of the Florida Environmental Land and Water Management Act of 1972, chapter 380, in order "to utilize and strengthen the existing role, processes, and powers of local governments in the *204 establishment and implementation of comprehensive planning programs to guide and control future development." § 163.3161(2), Fla. Stat. (1999) (emphasis added). In implementing the legislative mandate, the Department, acting in its role as the state land planning agency, is required to review local governments' proposed plans for the purpose of determining whether they are in compliance with the Act. § 163.3184(8), Fla. Stat. (1999).
It is obvious, as the regulatory agency charged with enforcing the statutes, that the Department must conduct its review in accordance with the legislative mandate that a submitted plan comply with the Act's overarching concern that future development be subjected to objective standards of guidance and control. To that end, the appropriate land use elements of section 163.3177 are required to be set out in the local comprehensive plans.
The reference made to an agricultural use in the first sentence of section 163.3177(6)(a) and the requirement in the fourth sentence thereof that each land use category include "specific standards for the density or intensity of use" must be understood in conjunction with the language contained within the subsection's second sentence, providing that the plan "include standards to be followed in the control and distribution of population densities and building and structure intensities." The latter provision is entirely consistent with the stated legislative intent in creating the Act: to provide for orderly future development without endangering the state's natural resources.
Although the pertinent language within 163.3177(6)(a), considered as a whole, furnishes adequate support for the Department's interpretation, other relevant provisions in the Act substantially strengthen our conclusion that not only is the Department's construction of the statute not clearly erroneous, but, in fact, it is entirely consistent with the broad objectives of the Act. While the specific use of "agriculture" is not defined in section 163.3164, the definitional portion of the Act, the more general term, "land use," is, which refers to developments that have either occurred or will be proposed, or to uses that are permissible or permitted under a comprehensive plan. § 163.3164(12), Fla. Stat. (1999).
From our reading of the Act, we agree with the Department that each land use must be set out in the comprehensive plan in a statement considering what effect, if any, the use contemplates future development, and if it does, the extent of the intensity of such use on local resources. As the Department explained in its final order, the definition of "development" in section 163.3164(6) "applies to impacts of development activities on natural resources, not to the requirement of depicting agricultural areas on the Future Land Use Map." The above provision simply refers to the definition of development furnished in section 380.04, Florida Statutes, which in turn states in section 380.04(1), Florida Statutes (1999), that it "means the carrying out of any building activity or mining operation, the making of any material change in the use or appearance of any structure or land, or the dividing of land into three or more parcels." An agricultural use or operation is explicitly excluded from the definition of development. § 380.04(3)(e), Fla. Stat. (1999). Because the definition of development has the same meaning under both chapters 163 and 380, the intentional legislative omission of agriculture therefrom cannot be lightly disregarded. Its exclusion clearly supports the Department's interpretation that only a use which involves development requires the application of intensity standards.
Section 380.04, included within the provisions of the Florida Environmental Land *205 and Water Management Act of 1972, was enacted to implement the stated purpose of the Act, which, similar to the goal of the Local Government Comprehensive Planning and Land Development Regulation Act, was designed to protect the natural resources of the state by, among other things, adequately planning for and guiding growth and development in the state. § 380.021, Fla. Stat. (1999). This Act, which predated the Local Government Comprehensive Planning and Land Development Regulation Act by three years, was devised, as was the latter act, to provide for orderly developmental growth without endangering the state's finite natural resources. Under both acts, the Department, acting as the state land planning agency, is empowered to review a local government's developmental plans which may have an impact on the state's environment. Under chapter 380, part I, it has the responsibility of reviewing developments of regional impact,[3] and under chapter 163, part II, of reviewing comprehensive plans.[4]
The primary purpose of the review under both acts is to ensure that developmental uses comply with statutory standards for the conservation of the state's environment. It is obvious to us that if a land use can be excluded from review under chapter 380 because it does not meet the definition of a development, a use not involving development need not be reviewed for its intensity under chapter 163.
For the above reasons, the interpretation the Department placed on section 163.3177(6)(a) is not clearly erroneous. The interim amendments provide, consistent with the final order, that only agricultural and directly related uses, and one single family dwelling unit per parcel or lot, are permitted in NRPAs. Thus, the comprehensive plan, as amended, does provide a standard regarding the "extent of the uses of land," as required by section 163.3177(6)(a), and appellants have failed to show that the Department was obliged to require an intensity standard in order to certify the interim amendments in compliance with law.
We also reject appellants' argument that the Department's rule 9J-5.003(60) requires that an intensity standard be applied to all designated land uses, contrary to the agency's non-rule interpretation. The rule's broad language does not establish that the Department has erroneously interpreted section 163.3177. We assume that in adopting the rule, the Department did not deliberately expand the statutory powers delegated to it, but was instead cognizant of the provisions of section 380.04, removing agricultural activities from the definition of development. An agency's rule, of course, may not expand a statute. See Makar v. Investors Real Estate Mgt., Inc., 553 So.2d 298 (Fla. 1st DCA 1989).
As for the second issue raised on appeal, that the evidence does not support the finding that the approved NRPA boundaries were sufficient to protect the Florida panther, we also affirm. Appellants claim that such finding was erroneous because there was evidence that such wildlife frequented areas not included within the NRPAs' boundaries. Even if we were to accept this argument as established by the evidence, appellants have failed to demonstrate how such a fact makes the boundaries of the NRPAs erroneous. As the ALJ noted, the boundaries approved are only intended to be temporary, *206 subject to additional adjustment as further studies indicate may be necessary.
AFFIRMED.
LEWIS, J., concurs. VAN NORTWICK, J., concurs and dissents with Opinion.
VAN NORTWICK, J., concurring in part and dissenting in part.
I concur with the majority opinion in affirming the administrative law judge's findings that it is fairly debatable that the NRPAs' boundaries, as established by the interim amendments to Collier County's comprehensive plan, were reasonable. I conclude, however, that the interim plan amendment fails to comply with the provisions of section 163.3177(6)(a), Florida Statutes (1999), which require that the plan define the agriculture land use category, among other things, by "specific standards for the density or intensity of use." Thus, I respectfully dissent to the affirmance as to this issue.
In the final order under review, the Department concluded that local government comprehensive plans are not required to adopt an intensity standard for agricultural uses, explaining as follows:
... the exemption of agricultural uses from the Section 163.3164(6), Florida Statutes, definition of "development" applies to impacts of development activities on natural resources, not to the requirement of depicting agricultural areas on the Future Land Use Map. Accordingly, there is no requirement that a local government adopt in the text of its plan an intensity standard for agricultural activities.... Such a requirement would restrict agricultural activities, a result that is contrary to the legislative intent reflected in the agricultural use exemption.
In the first sentence of section 163.3177(6)(a), the legislature has provided that the comprehensive land use plan set forth the "proposed future distribution, location, and extent of uses of land." This sentence then lists numerous possible designated land use categories, including agricultural. The fourth sentence of the same subsection (6)(a) further provides that "[e]ach land use category shall be defined in terms of the types of uses included and specific standards for the density or intensity of use." Thus, from these provisions, it seems clear that in subsection 163.3177(6)(a) the legislature is requiring that the comprehensive plan address the intensity of land use regardless of the category of use. Agricultural use is not exempt from this requirement.
It is certainly correct, as stated by the Department in its order, that section 163.3164(6) exempts agricultural use from the definition of "development."[5] This exclusion, however, is not dispositive of the issue before us. The terms "development" and "land use" are not synonymous under the Growth Policy Act.
In the Growth Policy Act, section 163.3164(12) defines "land use" to include both development and other land uses.[6] *207 Thus, the exclusion of agricultural use from the definition of "development" does not govern whether agricultural use is included in the concept of "land use." Nothing in the Act suggests that agricultural use is excluded from the concept of "land use;" and I can read the plain and unambiguous language of section 163.3177(6)(a) only to include agricultural use within the coverage of this section.
The majority opinion reasons that the second sentence of subsection (6)(a) of section 163.3177 limits the application of "intensity" to buildings and structures, and to no other land use. Respectfully, I cannot agree. The sentence in question states, as follows:
The future land use plan shall include standards to be followed in the control and distribution of population densities and building and structure intensities.

(Emphasis added). By reading this sentence to limit the concept of "intensity" under section 163.3177(6)(a) to building and structure intensities, however, the more general intensity requirements of the fourth sentence of subsection (6)(a) are rendered superfluous. It is a basic rule of statutory construction that "all parts of a statute must be read together in order to achieve a consistent whole. Where possible, courts must give effect to all statutory provisions and construe related statutory provisions in harmony with one another." Young v. Progressive Southeastern Ins. Co., 753 So.2d 80, 84 (Fla.2000)(quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla. 1992)).
In subsection (6)(a), it is apparent to me that the second sentence is addressing requirements in the comprehensive plan applicable to only certain types of land use intensities, that is, those land uses which involve buildings and structures; and is not intended to limit the meaning of the term "intensity" as it applies to other land uses governed by subsection (6)(a). Subsection (6)(a) concerns a wide range of land uses, some of which uses involve buildings and structures (e.g. residential, commercial and industrial uses) and some of which uses do not (e.g. agriculture, recreation and conservation uses). While the second sentence of this subsection provides that the land use plan must include standards for the control and distribution of buildings and structure intensities, the fourth sentence makes it equally clear that the plan must define each land use category (whether or not it involves buildings and structures) "in terms of ... specific standards for density or intensity of use." Interpreted in this manner, these provisions in subsection (6)(a) are perfectly consistent.
This broader definition of "intensity" is also consistent with the definition of that term in the Department's rules. Rule 95.003(60), Florida Administrative Code, defines "intensity" as "an objective measurement of the extent to which land may be developed or used, including the consumption or use of space above, on or below ground; and the measurement of the use of or demand upon natural resources; and the measurement of the use of or demand on facilities and services." (Emphasis added). By defining "intensity" to include "the use of or demand upon natural resources," in Rule 9J-5.003(60), the Department makes clear that it interprets the concept of "intensity" as used in section 163.3177(6)(a) not to be limited to population densities and buildings and structure intensity.
As the majority opinion correctly states, "an agency's interpretation of the statute it is charged with enforcing is entitled to great deference." Verizon Florida, Inc. v. Jacobs, 810 So.2d 906, (Fla.2002). But to which Department interpretation do we *208 defer? Here, in the order on review the Department has interpreted the meaning of "intensity" in section 163.3177(6)(a) in a manner that conflicts with the Department's own definition of that term in its rules. As we have explained, "[u]ntil amended or abrogated, an agency must honor its rules." Decarion v. Martinez, 537 So.2d 1083, 1084 (Fla. 1st DCA 1989). An agency action which conflicts with the agency's own rules is erroneous. See Vantage Healthcare Corp. v. Agency for Health Care Admin., 687 So.2d 306, 308 (Fla. 1st DCA 1997); see also Vitarelli v. Seaton, 359 U.S. 535, 545, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Note, Violations of Agencies of Their Own Regulations, 89 Harv. L.Rev. 629 (1974). Under section 120.68(7)(e)2, Florida Statutes (2001), if the agency exercised its discretion in a manner inconsistent with that agency's rules, we are mandated to remand a case to the agency for further proceedings.
Because I conclude that the Department's order before us approves a comprehensive plan that fails to comply with section 163.3177(6)(a), I would reverse. Accordingly, I respectfully dissent in part.
NOTES
[1] No issue has been raised as to the standing of appellants to bring this appeal.
[2] §§ 163.3161-.3245, Fla. Stat. (1999).
[3] § 380.06, Fla. Stat. (1999).
[4] § 163.3184, Fla. Stat. (1999).
[5] Section 163.3164(6) adopts the definition of development set forth in section 380.04. Section 380.04(3)(e) excludes from the definition of "development" "the use of any land for the purpose of growing ... agricultural or forestry products ... or for other agricultural purposes."
[6] Section 163.3164(12), Florida Statutes (2000), defines "land use" to mean:

"the development that has occurred on the land, the development that is proposed by a developer on the land, or the use that is permitted or permissible on the land under an adopted comprehensive plan or element or portion thereof...."
(emphasis added).