888 So.2d 50 (2004)
LENNAR HOMES, INC., Appellant,
v.
DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, DIVISION OF FLORIDA LAND SALES, CONDOMINIUMS AND MOBILE HOMES, Appellee.
No. 1D03-3020.
District Court of Appeal of Florida, First District.
September 27, 2004.
*51 William P. McCaughan and Jeffrey P. Margolis of Duane Morris LLP, Miami, for Appellant.
Karl M. Scheuerman, Staff Counsel, Department of Business and Professional Regulation, Tallahassee, for Appellee.
VAN NORTWICK, J.
Lennar Homes, Inc. (Lennar), appeals a declaratory statement issued by the Department of Business and Professional Regulation, Division of Land Sales, Condominiums and Mobile Homes (Division), ruling that a mandatory arbitration provision in a condominium purchase and sale agreement is prohibited by sections 718.111(3), 718.303 and 718.506, Florida Statutes (2002), and that the arbitration language in Lennar's agreement is void as against public policy. For the reasons that follow, we hold that the Division was without authority to interpret and declare void Lennar's contractual arbitration provision in a declaratory statement proceeding under section 120.565 and to announce a general policy of far-reaching applicability against arbitration provisions in a declaratory statement proceeding. Accordingly, we reverse.
Section 120.565(1) provides:
Any substantially affected person may seek a declaratory statement regarding an agency's opinion as to the applicability of a statutory provision, or of any rule or order of the agency, as it applies to the petitioner's particular set of circumstances.
Lennar is a builder and developer of residential condominiums. The purchase and sale agreement utilized by Lennar in selling condominiums includes a provision requiring that disputes between Lennar and a condominium purchaser be resolved by binding arbitration.[1] Pursuant to section *52 120.565(1), Lennar filed a petition for declaratory statement seeking the opinion of the Division
as to whether §§ 718.111(3), 718.303, and 718.506, Florida Statutes, or any other provision of Chapter 718, Florida Statutes, prohibit a mandatory and binding arbitration provision requiring mandatory and binding mediation and arbitration of disputes between a purchaser and condominium developer in a purchase agreement for a condominium unit ...
The Division found that such an arbitration provision is prohibited. After reviewing the disputed binding arbitration language in Lennar's purchase contract, the Division ruled that it exceeded and contradicted the prescribed statutory remedies and was void as against public policy.
Generally, sections 718.111(3), 718.303 and 718.506 grant a condominium purchaser causes of action for rescission or damages against a developer for the publication of false and misleading disclosures in any sales materials, authorize the condominium association or unit owner to file actions for damages or for injunctive relief or both, and grant the associations the power to bring an action on behalf of unit owners concerning matters of common interest. Further, sections 718.303(1) and 718.506(2) provide that the prevailing party in such actions is entitled to recover reasonable attorney's fees. Although none of these statutes mention arbitration or provide for exclusive jurisdiction in courts of law, the Division reasoned that by expressly granting specific remedies and procedures, the legislature intended that condominium contract disputes be brought solely in a court of law. See Aztec Medical Services, Inc. v. Burger, 792 So.2d 617, 621 (Fla. 4th DCA 2001)(recognizing that to rule the legislature intended to preclude the submission of a dispute to arbitration, "the legislature would have to state such a requirement in unambiguous text," quoting Sharpe v. Lytal & Reiter, Clark, Sharpe, Roca, Fountain, Williams, 702 So.2d 622, 624 (Fla. 4th DCA 1997)).
On appeal, Lennar asserts that these transactions involve interstate commerce.[2] Lennar argues that, as a result, these statutes cannot be construed as precluding arbitration of disputes arising out of the sale of its condominiums because the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, applies and preempts any state statute that prohibits arbitration. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Thus, under the FAA, their arbitration provision must be enforceable.
The FAA also provides that
[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). Therefore, an arbitration provision may be challenged "based upon any state-law contract defense." Gainesville Health Care Center v. Weston, 857 So.2d 278, 283 (Fla. 1st DCA 2003); see also Allied-Bruce Terminix, 513 U.S. at 281, 115 S.Ct. 834. Seizing upon this principle, the Division argues that, under Florida law, Lennar's contract *53 is both procedurally and substantively unconscionable. See generally Powertel, Inc. v. Bexley, 743 So.2d 570 (Fla. 1st DCA 1999).
"A declaratory statement by a state administrative agency is subject to judicial review by appeal ... under Section 120.68(1)...." Chiles v. Department of State, Division of Elections, 711 So.2d 151, 155 (Fla. 1st DCA 1998). However, unlike our ability to review the agency's interpretation of the statute in Chiles, this court cannot engage in meaningful review of the declaratory statement appealed because the issues raised on appeal were not expressly raised in the declaratory statement proceedings.
Intertwined with the issue of statutory preclusion of arbitration is the constitutional issue of FAA preemption. Southland Corp. v. Keating, 465 U.S. 1, 15-16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). However, this issue was not addressed below; nor could it have been since an agency does not possess the authority to determine the constitutionality of statutes. See Palm Harbor Special Fire Control District v. Kelly, 516 So.2d 249, 250 (Fla.1987).[3] Similarly, although the Division found Lennar's arbitration provision void as against public policy, the issue of the unconscionability of Lennar's arbitration provision was not expressly raised below. Further, the determination of unconscionability of a contract is fact-driven and generally requires an evidentiary hearing, see Stewart Agency, Inc. v. Robinson, 855 So.2d 726, 727 (Fla. 4th DCA 2003), which is not accorded in a declaratory statement proceeding. Florida Optometric Association v. Department of Professional Regulation, Board of Opticianry, 567 So.2d 928, 936 (Fla. 1st DCA 1990).
The authority of the Division to issue declaratory statements is limited by section 120.565 to a determination "as to the applicability of a statutory provision ... to the petitioner's particular set of circumstances." See generally Grippe v. Florida Department of Business and Professional Regulation, Division of Florida Land Sales, Condominiums, and Mobile Homes, 729 So.2d 459 (Fla. 4th DCA 1999). In our Chiles decision, which the Supreme Court expressly approved in Florida Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering v. Investment Corp. of Palm Beach, 747 So.2d 374, 375 (Fla.1999), this court explained:
A declaratory statement may not be employed in place of a rule to require compliance with general agency policy. See Regal Kitchens Inc. v. Florida Department of Revenue, 641 So.2d 158 (Fla. 1st DCA 1994); Tampa Electric Company v. Florida Department of Community Affairs, 654 So.2d 998 (Fla. 1st DCA 1995). If an agency is presented with a petition for a declaratory statement requiring a response that amounts to a rule, the agency should decline to issue the statement and initiate rulemaking. See Florida Optometric Association; Agency for Health Care Administration v. Wingo, 697 So.2d 1231 (Fla. 1st DCA 1997). However, a declaratory statement is not transformed into a rule *54 merely because it addresses a matter of interest to more than one person.
Chiles, 711 So.2d at 154. Given the express directive of the language in the declaratory statement issued here, we are confronted with the issue of whether the response of the agency here "amounts to a rule" or "merely ... addresses a matter of interest to more than one person." Id.[4]
In Chiles this court found that Commissioner Brogan was entitled to a declaratory statement whether section 215.3206(2), Florida Statutes, precludes certification of candidates for public campaign financing, even though other state candidates could raise the same issue. Id. at 155. In Investment Corp., 747 So.2d at 385, the Florida Supreme Court determined that an agency can issue a declaratory statement dealing with a petitioner's "particular set of circumstances," while at the same time announcing its intention to initiate rulemaking on the same subject. The court reasoned:
It must be observed that under circumstances such as those presented in this case, involving such a unique industry having very limited participants engaged in almost identical operations, declaratory statements as to one would almost invariably be of interest to others in the very limited group. We are not aware of any rule of law that precludes an agency from simultaneously pursuing both courses of action. Further, such an approach to these issues does not appear to harm the rights of "[a]ny substantially affected person[(s)].
Id.
We find the instant case to be factually distinguishable from both Chiles and Investment Corp. The declaratory statement in this case not only determined the applicability of several Chapter 718 statutes to Lennar's particular purchase contract, it announced a broad agency policy that prohibited the use of arbitration provisions in condominium purchase and sale agreements. We do not believe that a statement of policy regulating all purchases and sales of condominiums in Florida can be likened to the "very limited participants engaged in almost identical operations" which the court addressed in Investment Corp. Further, here, unlike Investment Corp., the agency has not announced its intention to institute rulemaking on this subject.[5] The Division cannot use the declaratory statement proceeding as a vehicle to announce a broad policy against arbitration. See Tampa Electric Company v. Florida Department of Community Affairs, 654 So.2d 998, 999 (Fla. 1st DCA 1995) (a declaratory statement which sets forth "broad agency policy ... that appl[ies] to an entire class of persons" is impermissibly broad.)
In the case before us, the Division went beyond applying the condominium statutes to Lennar's contract and ruled that the contract language requiring arbitration was void as against public policy. We *55 know of no statute which confers authority on the Division to declare a party's contract void. The Division may not interpret a party's contract and then enforce its interpretation on the parties. Peck Plaza Condominium v. Division of Florida Land Sales and Condominiums, Department of Business Regulation, 371 So.2d 152, 153-54 (Fla. 1st DCA 1979). "Jurisdiction to interpret such contracts is, under our system, vested solely in the judiciary." Id. at 154; see also Weston, 857 So.2d at 283 (recognizing that a court determines the validity of an arbitration provision and whether it is unconscionable or not).
In summary, we conclude that this case involves issues which cannot be determined in a section 120.565 proceeding and that the Division lacked the authority to declare void the appellant's condominium purchase and sale agreement. Accordingly, the Division should have declined to issue a declaratory statement. See, e.g., Grippe, 729 So.2d at 459.
REVERSED.
WOLF, C.J., CONCURS and ERVIN, J., DISSENTS WITH WRITTEN OPINION.
ERVIN, J., dissenting.
The majority's opinion reverses the declaratory statement of the Division of Land Sales, Condominiums and Mobile Homes (Division) on two separate bases: (1) that the Division was without authority to declare the arbitration language in the declaration of condominium proposed by the developer, Lennar Homes Inc., void as against public policy, and (2) that the effect of the statement was the issuance of a non-adopted rule, contrary to the provisions of section 120.52(15), Florida Statutes (2002). I cannot agree with either of these conclusions, and therefore dissent.
As to the first of the two reasons given for reversal, the majority, in my judgment, mischaracterizes the Division's dispositive ruling, which addressed only the developer's petition asking for an interpretation of whether sections 718.111(3), 718.303, and 718.506, Florida Statutes (2002), prohibit certain provisions in its proposed contract requiring mandatory mediation and binding arbitration of disputes between a purchaser of a condominium unit and the developer. The Division answered, interpreting the statutes as precluding binding arbitration. Its action was altogether in keeping with the reason for declaratory statements by agencies: to inform parties about the scope of statutes and rules and whether a party's intended actions fall within or exceed such scope.
The Division found that the arbitration provisions of paragraph 43 of the contract exceeded the authority of the pertinent statutes and that the provisions were contrary to public policy, as embodied in the pertinent statutes. In the decretal portion of the Declaratory Statement, the Division ordered, in full:
WHEREFORE, based upon the statement of facts and conclusions of law, it is DECLARED that Lennar's proposed declaration of condominium or purchaser contract may not contain the proposed mandatory mediation and binding arbitration provisions because these provisions are inconsistent with sections 718.111(3), 718.303 and 718.506, Florida Statutes, and therefore, prohibited by section 718.104(4)(m), Florida Statutes.
Section 718.104 details 15 requirements of a declaration of condominium, and provides in subsection (m) that it may contain "[o]ther desired provisions not inconsistent with this chapter." Lennar's contract is 12 pages long, consisting of 51 paragraphs with numerous subparagraphs, and paragraph 43, dealing with "arbitration of disputes," *56 is simply a component of such contract. All the Division did in issuing its statement was inform Lennar that the arbitration provisions, which are clearly separable from the rest of the declaration, could not be included, because they would run afoul of the specified provisions in chapter 718. It did not make any comment whatsoever about any other provision in the contract, much less declare the entire contract void.
We review an agency's declaratory statement under the clear and erroneous standard. In examining an agency's interpretation of a statute that it is charged with enforcing, an appellate court is required to accord to it great deference. See Fla. Wildlife Fed'n v. Collier County, 819 So.2d 200, 203 (Fla. 1st DCA 2002). As this court observed in State Department of Health & Rehabilitative Services v. Framat Realty, Inc., 407 So.2d 238, 242 (Fla. 1st DCA 1981): "[T]he judiciary must not, and we shall not, overly restrict the range of an agency's interpretative powers. Permissible interpretations of a statute must and will be sustained, though other interpretations are possible and may even seem preferable according to some views."
Under this extremely deferential review standard, it is our task to decide simply whether the agency's interpretation of the statutes falls within the range of permissible interpretations, and I see nothing in the pertinent provisions reasonably suggesting that they do not. As pointed out by it in its declaratory statement, the Division is the agency that is statutorily empowered to interpret and enforce chapter 718, the Condominium Act, and, among its duties, it is required to review proposed documents relating to the sale or lease of residential condominium units for more than five years. It complied with its regulatory duties by concluding only that the proposed documents were not in compliance with pertinent provisions of the Florida Condominium Act.
Although nothing in chapter 718 expressly prohibits arbitration, nothing in the three statutes, which the Division examined for a determination of consistency with Lennar's documents, expressly states that arbitration is authorized. For example, section 718.111(3), relating to the powers of condominium associations, provides in part that an association "may ... sue or be sued with respect to the exercise or nonexercise of its powers." Section 718.303, pertaining to obligations of owners, authorizes a unit owner who prevails in any action with an association to recover reasonable attorney fees "as determined by the court." Section 718.506, precluding the developer from publishing false and misleading information, provides an aggrieved person "a cause of action to rescind the contract or collect damages from the developer."
In support of its conclusion that the Division's statement exceeded the scope of its delegated powers in declaring the arbitration provisions void as against public policy, the majority cites Peck Plaza Condominium v. Division of Florida Land Sales and Condominiums, 371 So.2d 152 (Fla. 1st DCA 1979). The facts in Peck Plaza are altogether dissimilar from those at bar. There the court concluded that nothing in the Condominium Act granted the Division the authority to interpret and thereafter enforce its interpretation of an admittedly ambiguous contract. It appears from the opinion that the controversy was not raised in a declaratory statement proceeding, but, more likely, in a section 120.57 disputed-fact hearing. The court's language therein should be, in my judgment, limited to the facts before it, involving the question of whether the Division's delegated enforcement powers gave *57 it the authority to construe an ambiguous contract for the purpose of resolving a dispute between certain unit owners and members of the entire association regarding who should bear the cost of electricity for servicing an elevator in the condominium which was used only for the benefit of the owners.
In contrast, the Division, in the case now on appeal, did not interpret and enforce a provision that was disputed by parties to a contract, and Lennar did not contest the Division's authority to interpret the statutes regarding whether the arbitration provisions were consistent with chapter 718, Florida Statutes. Instead, Lennar challenged the Division's construction of chapter 718 as prohibiting binding mediation and arbitration of disputes between it and purchasers. Clearly, the Division is empowered to construe pertinent provisions of chapter 718 for such purpose. Section 718.501(1), Florida Statutes (2002), provides that the Division "has the power to enforce and ensure compliance with the provisions of this chapter and rules promulgated pursuant hereto relating to the development, construction, sale, lease, ownership, operation, and management of residential condominium units." Additionally, Florida Administrative Code Rule 61B-17.005 requires the Division to determine whether a declaration of condominium is consistent with chapter 718. Rule 61B-17.005(3)(a) provides: "The Division will examine the content of the filing to determine its sufficiency under the Condominium Act and these rules." In my judgment, the Division's determination that a provision in a proposed condominium document is contrary to pertinent statutes falls squarely within its powers.
It is possible the Division's legal conclusion that the pertinent statutes bar arbitration collides with the Florida Arbitration Code, sections 682.01-682.22, or with the Federal Arbitration Act. Yet, the Division was not asked to decide, nor is it authorized to decide, such questions. Any lurking issues the Division did not specifically address, which were beyond the scope of the Division's power to consider, are not precluded by the order entered from being later addressed in a judicial forum. See Grippe v. Fla. Dep't of Bus. & Prof'l Regulation, 729 So.2d 459 (Fla. 4th DCA 1999).
I dissent as well from what appears to be the majority's conclusion that the Division's statement must be invalidated because its effect was the issuance of a non-adopted rule. The agency's statement can, by no stretch of the imagination, be said to be, as required by section 120.52(15), "one of general applicability that ... prescribes law or policy." § 120.52(15), Fla. Stat. (2002). The Division's interpretation applied only to the developer before it, and to the documents submitted by it for review. As such, it could not be one which had "`the direct and consistent effect of law."' State, Dep't of Admin. v. Harvey, 356 So.2d 323, 325 (Fla. 1st DCA 1977) (quoting McDonald v. Dep't of Banking & Fin., 346 So.2d 569, 581 (Fla. 1st DCA 1977)).
The analysis this court used in State, Dep't of Commerce v. Matthews Corp., 358 So.2d 256 (Fla. 1st DCA 1978), is highly instructive with regard to the facts at bar. There a competitive bidder on a public-works project brought a rule challenge, seeking to have certain wage-rate determinations declared invalid as non-adopted rules. The hearing officer agreed and declared the determinations invalid because, among other things, they uniformly applied to all contractors in each geographic area where the project was located. In reversing the ruling, this court observed that the determinations could not be considered general statements of applicability, as defined by statute, because they pertained *58 only to the particular work specified, and, more to the point, they had "no prospective application to any other contract-only the specific project involved in the particular location." Id. at 258. Because the Division in the present case did only that which it was required to do by section 120.565, Florida Statutes (2002), i.e., issue a declaratory statement "as it applies to the petitioner's particular set of circumstances," its action can hardly be described as "an agency statement of general applicability," as defined in section 120.52(15).
For all of the above reasons, I would affirm the Division's statement in its entirety.
NOTES
[1] Section 43.3 of Lennar's proposed purchase and sale agreement provides in pertinent part:

If the Dispute is not fully resolved by mediation, the Dispute shall be submitted to binding arbitration and administered by the AAA [American Arbitration Association] in accordance with the AAA's Supplemental Rules for Residential Construction Arbitration Rules in effect on the date of the request.
[2] Without citation to the record, Lennar states that the construction of its condominiums involves interstate commerce because materials and equipment are used which are manufactured and/or produced in states outside of Florida; Lennar engages in marketing and advertising activities throughout the United States; and Lennar sells to purchasers located outside of Florida.
[3] This court is precluded from addressing the preemption issue on appeal because the determination that the FAA applies only comes into play if the contract is one affecting interstate commerce. See 9 U.S.C. § 2; Perry v. Thomas, 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)(the FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause."). Because the parties did not and could not litigate the interstate commerce issue below, we are unable to decide this factual issue on appeal. See, e.g., Lytle v. CitiFinancial Services, Inc., 810 A.2d 643, 655-56 (Pa.Super.Ct.2002).
[4] Section 120.52(15), Florida Statutes (2002), defines "Rule," in pertinent part, as follows:

[E]ach agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the procedure or practice requirements of an agency....
[5] The parties do not argue, and therefore we do not address, whether under the 1996 and 1999 amendments to Florida's Administrative Procedure Act regarding the scope of agency rulemaking authority, see sections 120.52(8) and 120.536(1), sections 718.111(3), 718.303 and 718.566 provide the Division with the rule-making authority to prohibit arbitration. See, e.g., State, Board of Trustees of the Internal Improvement Trust Fund v. Day Cruise Association, Inc., 798 So.2d 847 (Fla. 1st DCA 2001); Southwest Florida Water Management District v. Save the Manatee Club, Inc., 773 So.2d 594 (Fla. 1st DCA 2000).