1 So.3d 291 (2009)
EDEN ISLES CONDOMINIUM ASSOCIATION, INC., Appellant,
v.
DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATIONS, DIVISION OF FLORIDA LAND SALES, CONDOMINIUMS AND MOBILE HOMES, Appellee.
No. 3D07-2022.
District Court of Appeal of Florida, Third District.
January 14, 2009.
Leonardo G. Renaud, Miami Lakes, for appellant.
Patricia Nelson, for appellee.
Before RAMIREZ and ROTHENBERG, JJ., and SCHWARTZ, Senior Judge.
RAMIREZ, J.
This is an appeal from a final order issued by the Department of Business and Professional Regulations, Division of Florida Land Sales, Condominiums, and Mobile Homes which ordered appellant Eden Isles Condominium Association, Inc. to cease and desist from any further violations of Chapter 718, Florida Statutes (2005), and imposed an administrative penalty of $5,000. Because we conclude that the Division erred in imposing such a penalty, we reverse.
Eden Isles comprises seven identical, four-story buildings, containing fifty two units each. All units are laid out according to one of three different floor plans. The buildings are differentiated by a letter from A through G. Building G was the last one to be built. For years, Eden Isles' office staff and board of directors received complaints regarding the inequity of the assessment structure, specifically, the fact that equally sized units were required to pay differing assessment amounts. In 2004, Eden Isles' board held a meeting to address the inequities in assessments. At its meeting, the board attempted to establish greater fairness by requiring that all similarly situated unit owners be assessed *292 equally for common expenses. They used the percentages assigned to the newest structure, Building G, which percentage more accurately correlated to the size of each unit. This resulted in approximately half the unit owners paying more and about half paying less. For example, Unit 100 of Building A paid $2.31 more per month, while Unit 101 of Building A paid $3.31 less. Thus, the board felt that for the year 2005, Eden Isles would be assessing similarly situated unit owners equally.
The record is unclear as to the timing, but at some point, the board was made aware of an amendment to the Declaration of Condominium prescribing each unit's share of the common expenses. There was no evidence presented as to when this amendment took effect, but it is undisputed that the amendment established a schedule of percentages for each building that resulted in similarly situated owners paying a disproportionate share of the common expenses. The pertinent provision was amended as follows:
(1) Percentage of interest in the common elements for each apartment unit is shown above.

(2) Common Surplus. Each condominium apartment shall be entitled to an equal share a share in the common surplus in the same percentage as its interest in the common elements.

(3) Common Expenses. Each condominium apartment shall bear an equal share in the common expenses other than rent due for use of the community facilities its share of the common expenses in the same percentage as its interest in the common elements.

To discover the percentages, the amendment contained two pages of columns, with one column detailing the unit number and a row describing Part 1 through 7 and another row the letters A through G in parenthesis. Next to the unit numbers are apparently random letters of A through C, with some units displaying A* and a note at the bottom of the page explaining that the A* indicated that type B in Part 1 is type A.
One of the unit owners filed a complaint with the Division alleging that Eden Isles failed to assess unit owners for common expenses pursuant to the Association's Declaration of Condominium as amended. In response, the board decided to revert back to the original assessment percentages, beginning in 2006. It also offered the owners a refund if they had overpaid their individual assessment, but no one requested the return of any difference in payment. The Division, however, refused to accept "yes" for an answer and proceeded undeterred with its investigation and, on February 3, 2006, issued a Notice to Show Cause to the Association to refute the charge that in 2005 it assessed unit owners for common expenses at rates which differed from those set out in its Declaration of Condominium, in violation of section 718.115(2), Florida Statutes (2005).
The Administrative Law Judge, John G. Van Laningham, conducted a hearing over two days where not a single complainant appeared. Patrick Flynn testified for the Division. He was cross-examined regarding the amendment and the percentages assigned to each unit as follows:
Q. Do you see at the bottom where it says in parentheses, note: A, star, indicates that type B in part one is type A, and it has close parentheses?
A. Which page are you referencing? Is it the first page?
Q. It [is] page 2.
A. Okay. Yeah. Note  okay.
Q. Do you know what that means?

*293 A. No. I mean without  you know, this is the first time I have looked at them. No, I don't.
In a detailed nineteen-page recommended order, the ALJ concluded that, because the imposition of a fine was punitive in nature, the Division had the burden of proving the violation by clear and convincing evidence, citing to Department of Banking & Finance Division of Securities & Investor Protection v. Osborne Stern & Co., 670 So.2d 932, 935 (Fla.1996). The ALJ found that the language in the amendment was ambiguous and recommended that the Division rescind its Notice to Show Cause and forgive the Association from paying a fine. The ALJ then cited to Peck Plaza Condominium v. Division of Florida Land Sales & Condominiums, Department of Business Regulation, 371 So.2d 152 (Fla. 1st DCA 1979), which held that Florida's condominium law did not grant to the Division the authority to interpret and then to enforce its interpretation of the provisions of a condominium contract that were ambiguous. "Jurisdiction to interpret such contracts is, under our system, vested solely in the judiciary." Id. at 154. See also Lennar Homes, Inc. v. Dep't of Bus. & Prof'l Regulation, Div. of Fla. Land Sales, Condos. & Mobile Homes, 888 So.2d 50, 54-55 (Fla. 1st DCA 2004) ("In the case before us, the Division went beyond applying the condominium statutes to Lennar's contract and ruled that the contract language requiring arbitration was void as against public policy. We know of no statute which confers authority on the Division to declare a party's contract void. The Division may not interpret a party's contract and then enforce its interpretation on the parties.").
With the obstinacy of Captain Ahab in search of Moby Dick, the Division filed numerous exceptions to the judge's conclusions. First, it does not dispute the fact that its interpretation of the amendment to the Declaration creates an inequitable scheme for the assessment of dues, nor the board's conclusion that using the percentages assigned to Building G more accurately corresponded to the size of each unit in all seven buildings. Second, the Division has never attempted to explain the meaning of all the columns and rows contained in the amendment. Third, the Division has never disputed the fact that the board's interpretation of the amendment created a more equitable system on which to base the assessments. Lastly, it is undisputed that the board voted to change its billing system at an open meeting with unit owners, with their input.
Nevertheless, in a twelve-page order, the Division concluded that it was "authorized to impose a Category 2 penalty of $5,000 for this major violation under Florida Administrative Code Rule 61B-21.003(7)(b) and section 718.501(1)(d)4, Florida Statutes."[1] This administrative rule considers violations to be major according to their potential for consumer harm. The order does not explain what consumer was harmed in a proceeding where no complainant bothered to appear at the hearing and where the board's offer to refund any excess payments went unanswered.
Furthermore, the Division has not cited any authority for penalizing an association for disagreeing with its interpretation of language contained in a condominium document. In Grippe v. Florida Department of Business & Professional Regulation, Division of Florida Land Sales, Condominiums, & Mobile Homes, 729 So.2d 459 (Fla. 4th DCA 1999), the court affirmed the Division's refusal to interpret certain *294 language contained in the condominium association's declaration. "The Division correctly found it lacked authority to interpret ambiguous provisions of a condominium contract.... Grippe's relief, if any, lies either in the courts, or perhaps in mandatory dispute resolution under the provisions of Chapter 718, Florida Statutes." Id. (citations omitted). We fail to see how the board's attempt to promote equality constituted a "major violation" of any statute or rule that warrants the Division's protection from potential consumer harm. Because the Division is enforcing statutes that are penal in nature, they must be strictly construed. See Colbert v. Dep't of Health, 890 So.2d 1165, 1166 (Fla. 1st DCA 2004).
We therefore reverse the final order of the Division and remand with instructions that the Administrative Law Judge's recommended order be adopted as the final order.
Reversed and remanded with instructions.
ROTHENBERG, J., concurs.
SCHWARTZ, Senior Judge (dissenting).
I believe the Division got it exactly right in its "interpretation" of the unambiguous provisions of the condominium documents in question. As its answer brief correctly states:
The amendment at issue establishes specific percentages each unit in all seven buildings must contribute toward payment of common expenses. Even if units are identical in size, the amendment establishes varying percentages to be paid by the units. The changes to the text of the declaration made by the amendment make clear that similarly situated units were not intended to be treated equally by the amendment.
(1) Percentage of interest in the common elements for each apartment unit is shown above.

(2) Common Surplus. Each condominium apartment shall be entitled to an equal share a share in the common surplus in the same percentage as its interest in the common elements.

(3) Common Expenses. Each condominium apartment shall bear an equal share in the common expenses other than rent due for use of the community facilities its share of the common expenses in the same percentage as its interest in the common elements.

The amendment specifically and intentionally removed any provision for assessing common expenses equally on a per unit basis and instead required that assessments be paid according to the percentages identified in the percentage of interest table for each individual unit. The percentage of interest table clearly identifies each individual unit in Appellant's multicondominium and each unit's proportionate share of the assessment burden. As noted by the Division in its Final Order, "it would be difficult to find a document that more clearly identifies each unit's percentage share of the common expenses."
NOTES
[1] Section 718.501(1)(d)4, provides for the appointment of a receiver or conservator. Absent from the statute is any reference to a monetary penalty. The Division must have meant section 718.501(1)(d)6, Florida Statutes (2005).