889 So.2d 849 (2005)
HEALTH OPTIONS, INC., Appellant,
v.
AGENCY FOR HEALTH CARE ADMINISTRATION and Baycare Health System, Inc., Appellees.
Nos. 1D03-3751, 1D03-3763, 1D03-3766, 1D03-3769, 1D03-3770, 1D03-3771, 1D03-3773, & 1D03-3774.
District Court of Appeal of Florida, First District.
November 17, 2004.
Rehearing Denied January 4, 2005.
*850 John Radey and Donna E. Blanton of Radey, Thomas, Yon & Clark, P.A., Tallahassee; Richard L. Shackelford and James W. Boswell of King & Spalding LLP, Atlanta, GA, for Appellant.
Gregory J. Philo, Chief Appellate Counsel, Tallahassee, for Appellee Agency for Health Care Administration.
H. Jack Klingensmith of Walters, Levine, Brown, Klingensmith & Thomison, P.A., Sarasota, for Appellee BayCare Health System, Inc.
George N. Meros, Jr. and Carlos G. Muniz of Gray Robinson, P.A., Tallahassee, for Amici Curiae Florida Association of Health Plans and American Association of Health Plans  Health Insurance Association of America.
Diane D. Tremor and Steven T. Mindlin of Rose, Sundstrom & Bentley, LLP, Tallahassee, for Amici Curiae Florida Hospital Association and Florida Academy of Health Care Attorneys.
ERVIN, J.
In these consolidated appeals, Health Care Options, Inc.,[1] a health maintenance organization, challenges eight final orders of the Agency for Health Care Administration (agency or AHCA), which adopted the recommendations of the fact-finder, Maximus, Inc., an independent third-party claim-dispute-resolution entity, selected by AHCA to review claim disputes between health providers and managed care organizations pursuant to the provisions of section 408.7057, Florida Statutes (2002). Maximus recommended that the inpatient hospital claims brought by appellee BayCare Health System, Inc., against appellant Health Care Options be dismissed, because BayCare had withdrawn all of its claims. AHCA determined the statute gave it no discretion to act contrary to the *851 recommendations submitted, and ordered dismissal of the BayCare claims. We disagree with AHCA's implicit interpretation that the statutorily-created dispute resolution process was, under the circumstances, nonbinding, and instead conclude that once the parties completed fact-finding of the disputed claims, as had occurred in five of the eight cases that BayCare submitted, the resolution dispute process became binding and BayCare thereafter was not authorized to withdraw its claims in those cases. Accordingly, we affirm the orders as they relate to the three cases in which fact-finding was not concluded, i.e., cases numbered 1D03-3751, 1D03-3763, and 1D03-3769, but we reverse the remaining orders and remand those cases for further proceedings consistent with this opinion.
In October 2000, Health Options entered into contracts with each of BayCare's hospitals to provide inpatient and outpatient services to members of Health Options' health plans. Effective October 1, 2002, BayCare terminated its contracts with Health Options, but it continued to provide services to Health Options patients through the last three months of that year, although such services were no longer covered by contract. BayCare billed Health Options patients for the three-month period based on the prior contractual charge at each BayCare facility. Health Options responded by instead paying BayCare at 120 percent of the Medicare reimbursement rate. In order to resolve the controversy, BayCare utilized the claim-dispute-resolution procedure provided in section 408.7057, and, after the parties' submission of evidence in five of the eight cases, Maximus made recommendations in four cases that were generally favorable to Health Options' reimbursement position. Before recommendations had been entered in the remaining four cases and evidence had yet been entered in three of the four, BayCare, less than 30 days after the initial recommendations, announced its withdrawal of all eight cases from the dispute resolution process, whereupon Maximus recommended AHCA's acceptance of the withdrawal requests and its dismissal of all cases. As earlier stated, AHCA's final orders accepted the recommendations, hence this appeal.
Initially, we review AHCA's orders, which essentially involve an interpretation of law, by the de novo standard, and, because the agency's interpretation is not one that we need give deference,[2] we conclude, after a review of the language of the statute, its legislative history, and the long-recognized presumption that the legislature is presumed to know both existing law and the judicial constructions placed thereon, that neither party to the resolution process was authorized to withdraw therefrom after fact-finding had been completed.
We begin our analysis with adherence to the rule that in construing a statute's terms, the polestar that guides a court's inquiry is the legislative intent. McLaughlin v. State, 721 So.2d 1170 (Fla.1998). The express language of section 408.7057 itself sheds very little light on *852 whether the legislature intended the resolution-dispute mechanism to be binding. BayCare defends the orders by pointing out that section 408.7057(4) requires AHCA to adopt the recommendation of the resolution organization within 30 days after its receipt. It continues that it timely withdrew its claims before any orders had been entered or the expiration of 30 days; therefore, because the statute's terms do not explicitly prohibit its withdrawal under such circumstances, the statutory procedure must be considered a voluntary, nonbinding alternative resolution process. If BayCare's argument is correct, the consequence of the process countenanced by AHCA is that a party, having volitionally submitted itself to the resolution system, when confronted by an adverse recommended decision, has the option at any time before an order is entered, or within 30 days after the agency's receipt of the recommendation, to withdraw its claim and thereafter grieve its complaint in a judicial forum. We cannot conceive that the legislature, in creating what appears to be a relatively simple, expeditious means of resolving claims between health-care providers and maintenance organizations, reasonably intended such a wasteful, ineffective procedure, which would make it, for all practical purposes, a moot court endeavor.
As stated, the statutory language does not in clear and unmistakable terms state that the process is binding or otherwise. It does, however, describe it as a "claim-dispute-resolution process," and, when considering the legislative history leading to the statute's enactment, we believe the legislature ascribed something more to the term "resolution" than that given it by the agency. As originally conceived, the process was designated a mediation. The initial title of the legislation labeled it a "[s]tatewide provider and managed care organization claim dispute mediation panel." In the committee's substitute for Senate Bill 1508, the term "mediation panel" was replaced by the requirement that AHCA contract with independent dispute resolution organizations to recommend "resolution" of claims disputes, subject to a final order of the agency pursuant to Chapter 120. As the legislation evolved, agency discretion to accept or reject a recommendation of a dispute resolution organization was removed, as well as the reference to Chapter 120 disciplines, and, as earlier stated, AHCA was required, after the expiration of 30 days, to accept the resolution organization's recommendations.
The legislature's rejection of mediation of disputes in favor of their resolution is telling. The definitions of the two terms are clearly dissimilar. Mediation is described, among other things, as "[a] method of nonbinding dispute resolution involving a neutral third party who tries to help the disputing parties reach a mutually agreeable solution." BLACK'S LAW DICTIONARY 996 (7th ed.1999) (emphasis added). Resolution, on the other hand, is defined as a "formal expression of an opinion, intention, or decision by an official body or assembly...." BLACK'S LAW DICTIONARY at 1313. Clearly, the term resolution has a far greater imprimatur of authority than that accorded mediation. Given the history of section 408.7057, we cannot accept the argument that the legislature decided to reject a dispute mechanism which was clearly nonbinding, only to replace it with another nonbinding process whose only difference was the language used in its final version.
When one indulges the presumption that the legislature knows existing law as well as the judicial constructions placed thereon, the legislative intent becomes even more evident. As reflected in the historical development of section 408.7057, the legislature drafted and later rejected language in subsection (4), requiring AHCA *853 "to issue a final order subject to the provisions of chapter 120." The reference to the Administrative Procedure Act (APA) is no longer contained in the statute's final version, nor is any discretion given the reviewing agency, as is implicit in the prior version, to accept or reject the resolution organization's recommendation. It appears that the legislature intended, through its final adoption of the statute, that chapter 120 discipline would be imposed only at the judicial review level via section 120.68.
The reference to the APA is nonetheless important because it reveals that during the evolution of the alternative-dispute-resolution process, the legislature initially considered an agency review mechanism somewhat similar to that contained in section 120.57(1), Florida Statutes, which gives discretionary authority to an agency to reject or modify recommended conclusions of law and/or findings under the conditions therein stated. Thus, the legislature's knowledge of the procedure afforded by the APA and the judicial constructions placed upon it at the time the claim-dispute program went into effect[3] is an altogether relevant consideration in divining the legislative intent.
In Wiregrass Ranch v. Saddlebrook Resorts, Inc., 645 So.2d 374 (Fla.1994), the issue before the supreme court was whether a party to an administrative hearing, conducted pursuant to section 120.57, could file a voluntary dismissal of its exceptions to a hearing officer's recommended adverse factual finding before the reviewing agency took action on the recommendation. In concluding that the party was not authorized to so act, the court made the following pertinent observations:
To conclude otherwise, [i.e, to permit voluntary dismissal] ... could effectively allow an objecting party to unilaterally terminate jurisdiction and in effect declare null and void factual findings made in a proceeding clearly within an agency's area of responsibility and jurisdiction as directed by the legislature. We reject the contention of Wiregrass that it has the power to terminate the chapter 120 proceedings and the factual findings concerning an issue within the responsibility of the agency and have it separated from the jurisdiction of the water management district who must determine whether to grant or deny the permit. That, in our view, makes no sense whatever.
The court quoted with approval the following language of the Fifth District in Middlebrooks v. St. John's River Management District, 529 So.2d 1167, 1169 (Fla. 5th DCA 1988): "After the fact-finder retires to deliberate the outcome, it is too late under Rule 1.420(a) [Florida Rule of Civil Procedure 1.420(a)] to take a voluntary dismissal." Id. at 1169.[4]
Although the resolution-dispute process now provided in section 408.7057 is not expressly required to comply with chapter 120, we find it highly persuasive that the legislature, presumed to be cognizant of APA procedures and aware of the judicial interpretations placed on them, initially considered and thereafter rejected modeling an agency's review powers after those in section 120.57, with the result that a recommendation of the resolution organization must be accepted, under the provisions *854 of section 408.7057(4), as the agency's final order. It is obvious that the process was designed to expedite the resolution of disputed claims by removing any agency discretion to displace the fact finder's recommendation. We therefore conclude that the resolution system, being a hybrid form of an administrative proceeding, was intended by the legislature to require finality of the process once fact-finding was concluded, and, because the evidentiary stage of the proceeding below had been finalized in five of the eight cases, BayCare was not authorized to withdraw its claims therein from further review.
AFFIRMED in part, REVERSED in part and REMANDED.
PADOVANO and LEWIS, JJ., concur.
NOTES
[1] Health Options, Inc., is a wholly owned subsidiary of Blue Cross/Blue Shield of Florida, Inc.(BCBSF).
[2] Judicial deference to an agency's construction of a statute is not required if the statute is unrelated to the regulatory functions of the agency. See Chiles v. Dep't of State, Div. Of Elections, 711 So.2d 151, 155 (Fla. 1st DCA 1998). Thus, if a statute, such as section 408.7057, which prescribes only a procedure for the resolution of disputed health-care claims, involves no policy "considerations for which" an agency has been entrusted "special responsibility," McDonald v. Department of Banking and Finance, 346 So.2d 569, 579 (Fla. 1st DCA 1977), the agency "is in no better position than the court to interpret such a statute." Chiles, 711 So.2d at 155. We therefore reject AHCA's argument that we should apply the clearly erroneous review standard to its interpretation.
[3] Pursuant to section 408.7057(2)(a), AHCA was required to establish the dispute resolution program by January 1, 2001.
[4] In so deciding, the court obviously took into consideration the provisions of rule 1.420(a), permitting a plaintiff to voluntarily dismiss a case once without prejudice at any time "before retirement of the jury in a case tried before a jury or before submission of a nonjury case to a court for decision."