940 So.2d 563 (2006)
BAYCARE HEALTH SYSTEM, INC., Appellant,
v.
AGENCY FOR HEALTH CARE ADMINISTRATION and Health Options, Inc., Appellees.
Nos. 2D05-1691 to 2D05-1693, 2D05-2586, 2D05-2587, 2D05-2591, 2D05-2593.
District Court of Appeal of Florida, Second District.
October 27, 2006.
*564 H. Jack Klingensmith and Elinor E. Baxter of Walters Levine Klingensmith & Thomison, P.A., Sarasota, for Appellant.
Garnett W. Chisenhall, Jr., and Brian T. Mulligan, General Counsel's Office, Tallahassee, for Appellee Agency for Health Care Administration; and John Radey and Donna E. Blanton of Radey Thomas Yon & Clark, P.A., Tallahassee, for Appellee Health Options, Inc.
Edward J. Pozzuoli and Stephanie Alexander of Tripp Scott, P.A., Fort Lauderdale, for Amici Curiae Florida Hospital Association, Florida College of Emergency Physicians, Florida Medical Association, and the American College of Emergency Physicians.
George N. Meros, Jr., and Allen C. Winsor of Gray Robinson, P.A., Tallahassee, for Amicus Curiae Florida Association of Health Plans.
ALTENBERND, Judge.
In these consolidated appeals, Baycare Health Systems, Inc., a corporation that owns and operates a group of hospitals, appeals eight orders entered by the Agency for Health Care Administration (AHCA) in four separate administrative actions. The orders effectively deny reimbursement of approximately $2 million for medical services that Baycare hospitals provided to patients insured by Health Options, Inc., a health maintenance organization that is a wholly owned subsidiary of Blue Cross/Blue Shield of Florida, Inc. The AHCA's orders were entered based upon the results of a voluntary dispute resolution process, provided for by section 408.7057, Florida Statutes (2002). Consistent with the requirements of section 408.7057 and the holding of the First District in Health Options, Inc. v. Agency for Health Care Administration, 889 So.2d 849 (Fla. 1st DCA 2004), the orders adopt the recommendation of Maximus Center for Health Dispute Resolution (Maximus CHDR), an "independent third-party claim-dispute-resolution entity." See § 408.7057(1)(c), (4).
Baycare asks this court to hold section 408.7057 and the AHCA's rules implementing this dispute resolution process unconstitutional. In the alternative, Baycare asks this court to perform a de novo review of the factual and legal determinations by Maximus CHDR. Because this dispute resolution process was voluntary, and because Baycare instituted the process and was not affirmatively misled about the parameters of the process, we affirm the orders on appeal. We emphasize, however, that the legal conclusions made by undisclosed professionals as part of Maximus CHDR's standard procedures may have resolved these specific claims as part of a voluntary process, but those informal rulings have no precedential value.

I. THE FACTS
In October 2000, Health Options entered into individual contracts with Baycare hospitals that provided for specific reimbursement rates for patients who were insured by Health Options and treated at Baycare hospitals. On September 30, 2002, Baycare legally cancelled these contracts. The dispute in this appeal centers around the period between October 1, 2002, and December 31, 2002, during which Baycare hospitals continued to provide services to *565 numerous patients insured by Health Options. The parties disagree about the proper rates of reimbursement for the period when there was no specific contract in force between them.
The patients who were insured by Health Options and sought treatment at Baycare hospitals from October through December 2002 fall into three categories: (1) "continuity of care" patients for whom reimbursement rates are governed by section 641.51(8), Florida Statutes (2002); (2) patients seeking emergency care, for whom reimbursement rates are established by section 641.513(5), Florida Statutes (2002); and (3) all other patients who sought "non-emergency," "non-continuity of care" treatment, who must be billed a "reasonable rate," see, e.g., Payne v. Humana Hosp., 661 So.2d 1239, 1241 (Fla. 1st DCA 1995).
Baycare submitted reimbursement claims to Health Options for these patients. Health Options reviewed the bills submitted by Baycare, made its own assessment concerning the proper rate of reimbursement for each charge, and ultimately paid an amount significantly less than the amount billed by Baycare. In large part, the dispute between the parties centered on the reimbursement rates for emergency medical care.
To resolve this dispute, Baycare filed a series of claims with Maximus CHDR, the third-party claim-dispute-resolution organization with which the AHCA has contracted pursuant to section 408.7057 to resolve claims between medical service providers and insurers. The four claims at issue in this appeal total approximately $2 million. Baycare also submitted medical and billing records to support the charges. Maximus CHDR accepted the claims for review and notified Health Options of the claims. Health Options then filed a response on appropriate Maximus CHDR forms.
As presented to Maximus CHDR, the resolution of the large majority of these claims rested on a question of law related to statutory interpretation. The parties agreed that pursuant to section 641.513(5)(a)-(b), Florida Statutes (2002), Baycare was entitled to reimbursement for the emergency care claims in an amount equal to the lesser of (1) the provider's billed charges or (2) the "usual and customary" charges for such services in the community. They disputed, however, the proper formula for determining the "usual and customary" charges in the community.
Baycare asserted that the amount it billed for the services was commensurate with the "usual and customary" charges for such services in the community. In contrast, Health Options argued that an amount equal to 120% of the Medicare reimbursement rates was commensurate with the "usual and customary" charges. In a nutshell, Health Options asserted that it was well recognized in financial and medical circles that hospital billing fluctuates wildly between private payors, corporate payors, insurers, government payors, and health maintenance organizations, and that "hospitals' billed charges bear no resemblance to market realities." Noting that obtaining private billing or payment information from hospitals to determine what they "usually and customarily" charge was difficult based upon confidentiality and business proprietary concerns, Health Options concluded that the "usual and customary payment" a hospital receives was a better indicator of the market forces at work than what hospitals actually bill. Health Options concluded that a formula to pay 120% of Medicare reimbursement rates was appropriate and satisfied the statute's mandate to pay the "usual *566 and customary" charges for such services.[1]
Baycare thus presented claims to Maximus CHDR that required the private, third-party organization to interpret section 641.513(5)(a)-(b) and to apply that interpretation to a large class of claims. Between March and June 2003, Maximus CHDR reviewed these claims. There is no official record of these proceedings. It appears, however, that the review involved the use of unnamed medical and legal professionals who reviewed the written submissions and documents provided by Baycare and Health Options. There is at least some indication that Maximus CHDR's representatives may have engaged in ex parte communications with Health Options to clarify certain factual issues. No formal evidentiary hearing was held.
Ultimately, Maximus CHDR issued letters of recommendation on the claims to the AHCA, accepting Health Options' legal argument. Maximus CHDR generally concluded "that reimbursement of 120% of the Medicare fee schedule would fall within an appropriate range to be considered `reasonable'" and thus the equivalent of the "usual and customary" rates of other hospitals, as required by section 641.513(5)(a)-(b). As such, Maximus CHDR recommended that the vast majority of Baycare's claims for reimbursement should be denied.[2]
On June 16, 2003, apparently after it received Maximus CHDR's recommendations on the first three claims, Baycare sent a letter to Maximus CHDR asking that each of its claims be withdrawn. Based upon this letter, Maximus CHDR issued new letters of recommendation indicating that based upon Baycare's request to withdraw its claims, Maximus CHDR was now recommending that its previous recommendations be vacated and all of the claims be dismissed.
The AHCA received the various recommendations from Maximus CHDR. Both Baycare and Health Options filed legal arguments regarding whether Maximus CHDR or the AHCA could permit Baycare to withdraw its claims with Maximus CHDR once Baycare learned of the recommendation against it. In early August 2003, the AHCA issued final orders adopting the recommendations by Maximus CHDR to permit Baycare to withdraw its claims.
Health Options filed a notice of appeal in the First District Court of Appeal.[3] The First District reversed the four orders related to the claims now at issue in this appeal. As to these orders, the First District concluded that the "statutorily-created dispute resolution process" was binding "once the parties completed fact-finding of the disputed claims" and that "Baycare thereafter was not authorized to withdraw its claims in those cases." See Health Options, Inc. v. Agency for Health Care Admin., 889 So.2d 849, 851 (Fla. 1st DCA 2004). The First District concluded that the statute required the AHCA to adopt Maximus CHDR's initial recommendations, entered based upon the fact-finding process, as final orders. Id. The First District thus reversed the AHCA orders *567 and remanded those cases "for further proceedings consistent with th[e] opinion." Id.[4]
On remand, the AHCA entered new final orders in each case, now adopting the initial recommendations of Maximus CHDR and effectively affirming the denial of the large majority of Baycare's reimbursement claims. There was some delay between the entry of these orders and the service of the orders on Baycare. In the interim, Baycare filed "petition[s] to institute formal proceedings pursuant to § 120.569 and 120.57(1)" in the four cases. The petitions argued that Baycare's administrative claims affected Baycare's substantial interests and thus required due process of law not afforded by the Maximus CHDR dispute resolution process. As a result, Baycare argued that sections 120.569 and 120.57(1), Florida Statutes (2002), required a point of entry to initiate formal administrative proceedings to challenge the agency action. Baycare requested a formal hearing in each case.
Shortly after Baycare filed the petitions to institute formal proceedings, it received the new final orders entered by the AHCA. Baycare thus filed notices of appeal with this court to appeal these four final orders.
In addition to appealing the new final orders, Baycare also filed a "petition to reopen and reconsider final order" with the AHCA in the four cases. This motion argued that there was "newly discovered evidence" that established that Health Options' reimbursement formula, paying 120% of Medicare reimbursement rates as the equivalent of "usual and customary charges," violated section 641.513(5) and breached the insurance contracts between Health Options and its clients. Health Options responded to Baycare's "petition to reopen and reconsider." It argued that Baycare's appeal of the new final orders had divested the AHCA of jurisdiction to consider any request to hold formal hearings or reconsider these issues. The AHCA agreed. It issued four more orders, each finding that it lacked jurisdiction to consider the petitions to institute formal proceedings or reopen the proceedings because appeals were now pending in each case. Baycare also appealed these four orders.
Thus the consolidated appeals in this case seek review of four orders adopting Maximus CHDR's recommendation to deny the majority of Baycare's claims for reimbursement from Health Options and four orders denying Baycare any further administrative process before the AHCA.
II. THE LIMITED EFFICACY OF THE DISPUTE RESOLUTION PROCESS ESTABLISHED BY SECTION 408.7057
Section 408.7057 authorizes certain parties to elect to use a nonjudicial forum to resolve health insurance claim disputes. The statute sets out only limited outlines for this forum, and neither the statute nor the AHCA have provided specific procedural rules for the dispute resolution organization or the parties to follow. The process, at least as it appears to have proceeded in this case, may provide a fast and efficient method to resolve fact-intensive health coverage issues involving claims of modest size.
Unfortunately, Baycare invoked this voluntary forum to obtain a legal interpretation of a statuteapparently a matter of first impressionthat would establish *568 Baycare's reimbursement rates from Health Options for a large class of pending claims. The undisclosed panel of decision-makers utilized by Maximus CHDR ruled against Baycare, and Baycare has been trying ever since to obtain a second opinion from a court.
This case demonstrates that the process created by section 408.7057 is not an adequate method to resolve legal issues of first impression that involve the payment of millions of dollars.[5] Nevertheless, Baycare selected this process. It was entitled to file a lawsuit to resolve this dispute, in which it would have been entitled to certain specific due process protections.[6] Instead, it affirmatively chose a voluntary forum with minimal process.
In this appeal, Baycare again asserts, as it did before Maximus CHDR, the AHCA, and the First District, that Health Options' reimbursement formula is invalid under section 641.513(5) and that a proper interpretation of the statute would require Health Options to pay the amount that Baycare billed. Health Options and the AHCA, however, have not focused their arguments on the validity of the legal determination ultimately made by Maximus CHDR.[7] Instead, Health Options and the AHCA assert that Baycare voluntarily invoked the alternative third-party claim-dispute-resolution process of section 408.7057; that the AHCA's adoption of Maximus CHDR's recommendation was mandated first by section 408.7057 and confirmed by the First District in Health Options, 889 So.2d 849; that the shortcomings of the voluntary dispute resolution process do not implicate due process; and that our limited scope of review under section 120.68 does not permit this court to reverse the AHCA's orders, which were essentially ministerial. We agree.

III. DUE PROCESS
Baycare argues that section 408.7057 and the rules implementing the alternative third-party claim-dispute-resolution forum established by the statute are facially unconstitutional because they improperly delegate quasi-judicial power to Maximus CHDR without imposing adequate standards, guidelines, or criteria as to how to exercise that power. Further, Baycare complains that the statute and rules are unconstitutional as applied because they failed to afford Baycare adequate due process. Specifically, Baycare complains that Maximus CHDR reviewed these claims through the use of unnamed professionals, provided no opportunity for discovery or for objections or rebuttal, engaged in ex parte communications, and held no formal hearing.[8] Each of these *569 arguments assumes that the actions taken by Maximus CHDR are the equivalent of traditional state action, requiring full due process of the law.
Constitutional due process protections do not extend to private conduct abridging individual rights; only state action is subject to scrutiny under a due process analysis. Davis v. Prudential Sec., Inc., 59 F.3d 1186, 1190 (11th Cir. 1995). Here, the parties themselves agreed to submit their claims to Maximus CHDR, a third-party private organization. This is similar to a case in which the parties agree to voluntary but binding arbitration to resolve a case. Numerous courts have held that the "state action" element of a due process claim is absent in cases involving voluntary private arbitration. Id. at 1191. This is so even when the arbitration process is created by statute and provides for enforcement of the result by a court. Id. In this context, the key to whether an alternative dispute resolution process requires due process protections rests upon whether the process is voluntary or involuntary. As the Connecticut Supreme Court has explained, "Voluntary arbitration and compulsory arbitration are fundamentally different if only because one may, under our system, consent to almost any restriction upon or deprivation of right, but similar restrictions or deprivations, if compelled by government, must accord with procedural and substantive due process." Bodner v. United Servs. Auto. Ass'n, 222 Conn. 480, 610 A.2d 1212, 1216 (1992) (quoting Am. Universal Ins. Co. v. DelGreco, 205 Conn. 178, 530 A.2d 171, 177 (1987)). An agreement to arbitrate is equivalent to voluntarily entering into a contract, the terms of which the parties are free to specify. Davis, 59 F.3d at 1193.
Similarly, in this case Baycare voluntarily submitted its claims to Maximus CHDR, and as such agreed to that process as it was defined in the statute and the few administrative rules governing that process. Although Baycare now complains about the lack of procedural safeguards within that process, Baycare entered the process knowing that there were few defined procedural safeguards and apparently took no steps to clarify the process prior to invoking it. Baycare has not alleged that Maximus CHDR violated the terms of the statute or the rules implementing the program or that Baycare was specifically deceived about an aspect of the process. Given that Baycare had the option of filing a lawsuit, within which procedural and substantive due process protections would apply, the state did not deprive Baycare of its due process rights; Baycare chose to forego them, perhaps in the hopes of a more expedient resolution to its claims.
Baycare seeks to impose upon the process established by section 408.7057 the due process requirements normally afforded to administrative proceedings under sections 120.569 and 120.57(1). However, nothing in the statutes supports this argument. Section 408.7057 creates a voluntary process that is an alternative to the formal administrative process, as evinced by the requirement in section 408.7057(4) that the agency receiving a recommendation from the resolution organization "shall adopt the recommendation as a final order." Further, as discussed above, due process does not require more. The statutes do not deprive Baycare of any access to the courts or involuntarily transfer or delegate any judicial powers to Maximus CHDR. Baycare can only blame itself for the inadequacies of the forum that it selected.

IV. THIS COURT'S REVIEW OF THE AHCA ORDERS
Under section 120.68(7), Florida Statutes (2002), this court may set aside an *570 agency action or remand a case for further proceedings only under specific circumstances. Baycare argues that the AHCA's orders erroneously interpret section 408.7057, were entered without a hearing, and are unsupported by competent, substantial evidence.
Section 408.7057(4) states that the AHCA "shall" adopt Maximus CHDR's "recommendation as a final order." The First District concluded that this required the entry of the final orders now on appeal. Health Options, 889 So.2d 849. The AHCA obeyed the statute and the mandate of the First District.
As to the lack of an evidentiary hearing or competent, substantial evidence to support the AHCA order, under section 120.68(7)(a)-(b), this court may only set aside agency action on these bases when the agency's action "depends upon" factual findings. Here, the AHCA's action was mandated by statute based upon the result of the voluntary dispute resolution process; it was not based upon the agency's factual findings.
Our jurisdiction and our standards of review in administrative law are, as a general rule, issues that are established by the legislature through the enactment of a general statute. See art. V, § 4(b)(2), Fla. Const. Under section 408.7057, neither we nor the AHCA may review the merits of the decision of Maximus CHDR so long as it was entered in accordance with the statute.
Because the alternative dispute resolution process offered by section 408.7057 is completely voluntary, and because Baycare elected to initiate that process and forego the rights it otherwise would have had to a civil action in circuit court, Baycare has not been deprived of due process of law. Further, the AHCA has complied with section 408.7057 and the mandate of Health Options I, and there is no basis for us to set aside its orders.
Affirmed.
SILBERMAN and WALLACE, JJ., Concur.
NOTES
[1] Health Options also noted that this formula would permit it to have an established formula to deal with all of the claims it receives from various hospitals nationwide. It appears Health Options has been applying this formula accordingly.
[2] There were a few exceptions for claims that did not receive a response or involved other issues not related to the substantive legal issues presented in this appeal.
[3] Health Options also apparently appealed four other orders based upon recommendations made in four other claims made by Baycare. The First District affirmed three of these orders and reversed the fourth. None of these claims are the subject of this appeal.
[4] This specific ruling by the First District is the law of the case in this Second District appellate proceeding. We are not called upon to decide whether the Second District would reach the same conclusion in a case initiated in this court.
[5] Even if the Maximus CHDR process was altered and equipped to adequately address legal issues, it would be an inefficient process because the resolution of each claim carries no precedential value. A lawsuit resolves not only the claim before the court, it also provides potentially binding precedent for future claims. Although Health Options has occasionally argued that the Maximus CHDR recommendations in this case should be considered binding precedent, there is no legal support for this argument.
[6] See, e.g., Adventist Health System/Sunbelt, Inc. v. Blue Cross & Blue Shield, 934 So.2d 602 (Fla. 5th DCA 2006).
[7] Indeed, it appears that in the past the AHCA has taken the position espoused by Baycare: that Health Options should not be using the formula of 120% of Medicare reimbursement payment rates to determine "usual and customary" charges. The AHCA opined that Health Options' formula should rely on the "Prevailing Health Care Charges System," formerly known as the "Health Insurance Association of America."
[8] "Maximus" may be oddly named because the process by which it resolves claims might more aptly be described as "de minimus."